HOFFMAN HOUSE, NEW YORK, as Trustee, Appellant, *v.* ELIZUR V. FOOTE, as Executor of EDWARD S. STOKES, Deceased, Respondent.

1. APPEAL — NONSUIT — PRESUMPTION. On appeal from a judgment dismissing the complaint at the close of the plaintiff's opening address, every material fact in issue will be resolved or found in his favor.

2. TRUSTS — CORPORATION — PLEDGE. A corporation to which property has been assigned as a pledge for its own protection and indemnity, and the protection and indemnity of others who became the assignor's sureties on the faith of the pledge, may, as a trustee of an express trust, maintain a suit to reclaim the property pledged from the assignor, who had appropriated it to his own use, provided any of the obligations for the security and benefit of which the pledge was made remain undischarged.

3. PRINCIPAL AND SURETY — INDEMNITY — CONSTRUCTION. Under a written assignment of a judgment pledging the sums collected thereon for the protection and security of a specified principal and sureties upon a bond executed for the assignor, clauses providing for the application of the moneys collected "for the purposes above mentioned" and for the benefit of the sureties "as their interest may appear at the time," contemplate the protection and indemnity of all the sureties on the bond, and not merely of that one of them described as principal.

*Hoffman House* v. *Stokes*, 50 App. Div. 163, reversed.

(Argued October 9, 1902; decided November 11, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 4, 1900, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David McClure* for appellant. The instrument of March 18, 1895, and the payment of the money in accordance therewith to the plaintiff constituted the plaintiff trustee. (*Morse v. Morse*, 85 N. Y. 53 ; *Gilman* v. *McArdle*, 99 N. Y. 451 ; *Day* v. *Roth*, 18 N. Y. 448 ; *Matter of Carpenter*, 131 N. Y. 86 ; *Woodward* v. *James*, 115 N. Y. 346 ; *Gillet* v. *Bank of America*, 160 N. Y. 549 ; *Simpson* v. *J. C. C. Co.*, 47 App. Div. 17 ; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90 ; *Claflin* v. *Maglaughlin*, 65 Penn. St. 492 ; *Leitch* v. *Hollister*, 4 N Y. 211.) There is an outstanding trust which entitles the Hoffman House, as trustee, to maintain the present action. (*Wetmore* v. *Porter*, 92 N. Y. 76 ; *Zimmerman* v. *Kinkle*, 108 N. Y. 282 ; *Gillet* v. *Bank of America*, 160 N. Y. 549 ; *White* v. *Hoyt*, 73 N. Y. 505 ; *Hoffman* v. *Æ. F. Ins. Co.*, 32 N. Y. 405.)

*Charles E. Hughes* for respondent. The plaintiff has not a good cause of action in its alleged representative capacity as trustee. (*F. Nat. Bank* v. *Shuler*, 153 N. Y. 172 ; *Austin* v. *Munro*, 47 N. Y. 360 ; *O'Brien* v. *Jackson*, 167 N. Y. 31 ; *Collins* v. *Hydorn*, 135 N. Y. 320 ; *Beers* v. *Shannon*, 73 N. Y. 292, 297 ; *McColl* v. *Fraser*, 40 Hun, 114 ; *Mowry* v. *Hawkins*, 57 Conn. 453 ; *Stokes* v. *Reilly*, 121 Ill. 166 ; *Payne* v. *Rogers*, Douglas, 407 ; *Legh* v. *Legh*, 1 B. & P. 447.) The assignment of the Mackay judgment did not create a trust in the plaintiff, but was a direct conveyance to the three assignees by way of security, as stated. (*Leitch* v. *Hollister*, 4 N. Y. 211 ; *Dunham* v. *Whitehead*, 21 N. Y. 131 ; *Brown* v. *Guthrie*, 110 N. Y. 440 ; *Maass* v. *Falk*, 24 N. Y. Supp. 448 ; 146 N. Y. 34 ; *Boessneck* v. *Cowen*, 7 N. Y. Supp. 620 ; *Claflin* v. *Maglaughlin*, 65 Penn. St. 492.) If the plaintiff ever became trustee, the trust it assumed has been discharged, and it is not now entitled to prosecute any claim in its alleged representative capacity. (*Turk* v. *Ridge*, 41 N. Y. 201 ; *N. Y. S. Bank* v. *Fletcher*, 5 Wend. 85.)

O'BRIEN, J. The plaintiff's complaint was dismissed at the trial, and this appeal is from the affirmance of that judgment.

It seems to us that the judgment rests upon grounds so narrow and technical that the appeal should be sustained and the parties remitted to a trial of the case in the regular and ordinary way.

The issues in the case, if any, were triable by jury; but, after the plaintiff's counsel had opened the case to the jury, the learned trial judge granted a motion made by the defense for the dismissal of the complaint, and so the complaint was dismissed from what appears upon the face of the pleadings or was stated by counsel in opening the case to the jury. The record contains the pleadings, the opening address of plaintiff's counsel, the motion to dismiss, with much argument thereon by counsel on both sides, and concludes with the statement that the complaint was dismissed at the close of the opening, to which decision the plaintiff's counsel excepted. In substance this exception raises the question whether the court could properly nonsuit the plaintiff upon the pleadings and opening without further investigation of the facts bearing upon the merits of the controversy. When a defendant demands and procures such a ruling at the trial he must be prepared to defend it in this court upon the assumption that every material fact in issue is to be resolved or found in favor of the plaintiff.

The judgment in this case cannot be sustained without adopting some one of three possible theories incumbent upon the defendant to clearly establish. If it can be demonstrated either (1) that the complaint does not state a cause of action or (2) that a cause of action well stated is conclusively defeated by something interposed by way of defense and clearly admitted as a fact, or (3) that the learned counsel for the plaintiff, in his opening address, by some admission or statement of facts, so completely ruined his case that the court was justified in granting a nonsuit, then this judgment ought to be sustained; but not otherwise. The practice of disposing of cases upon the mere opening of counsel is generally a very unsafe method of deciding controversies, where there is or ever was anything to decide. It cannot be resorted to in

many cases with justice to the parties, unless the counsel stating the case to the jury deliberately and intentionally states or admits some fact that, in any view of the case, is fatal to the action.

I am unable to find anything of that kind in the opening address contained in this record. It might very well be held that the learned counsel in the opening enlarged or amplified the complaint, but it cannot be said that his claim was not at least as broad as his complaint, or that his case verbally stated to the jury was not as strong as presented by pleading. If the plaintiff's counsel had a case upon the pleadings, it cannot be said that he stated himself out of court in his opening to the jury.

The real question is whether he had any case upon the pleadings. The nonsuit rests upon the proposition that the plaintiff sued as trustee and had not stated any facts to justify a recovery in that capacity. The basis of the complaint is a written instrument which is set out in full, whereby the defendant assigned to the plaintiff and three other parties a judgment which he then held against Mackey of nearly one hundred thousand dollars. The purpose of the assignment was declared by the instrument to be for the purpose of securing the payment of a loan made to the defendant by one of the assignees, and of indemnifying the assignees from all loss or liability by reason of certain bonds or obligations which they had executed for the defendant and at his request, in litigations to which the defendant was a party, to enable him to appeal in one case and to get the benefit of a judgment and sale upon foreclosure in another case. The judgment was assigned as a pledge to secure the loan and to indemnify the defendant's sureties upon these bonds, and the money when collected was to be retained and applied by the plaintiff upon any of these obligations in case of default in payment, or in case the sureties or any of them were made liable thereon, or in case any of the contingencies happened against which the sureties were to be indemnified by the terms of the instrument declaring the purposes of the pledge. Although the assignment ran to

the plaintiff and the two other parties severally as security or indemnity against the several and separate obligations which they had severally assumed for the defendant and for the loan by one of them, yet the judgment was to be collected and received by the plaintiff alone and held or used by it for the purposes described, and the surplus, if any, was then to be paid over to the defendant. The judgment was collected by the plaintiff, and, having received the money, it was entered as a special account upon its books. Subsequently the defendant, having control of the plaintiff's corporate action, withdrew the fund from the special account and applied the same to his individual and private uses. It is obvious that the money collected on this judgment was not received or held by the plaintiff in its own right or in its simple private corporate capacity, but for a special and particular purpose, namely, the protection of the sureties on the bonds and the payment of the loan. That was the sole purpose for which the fund was created, and if a natural person should receive money under like circumstances and for a similar purpose it would not, I think, be an error of law to hold that he was a trustee and was liable to respond for the fund in a fiduciary or representative capacity. In the character of a trustee he could protect the fund from spoliation by any wrongdoer.

The plaintiff brought this action to reclaim and restore the fund, not only for its own benefit as one of the sureties, but for the benefit of others who were co-sureties with it and interested in the protection of the fund. A party, though a corporation, may prosecute an action for the benefit of others, and when it does it is a trustee of an express trust, within the provisions of the Code. (Code Civ. Proc., § 449.) The plaintiff received and held the fund as trustee for its own protection as surety for the defendant and also for the protection of the other sureties on the bonds and to pay a certain loan, and as to the surplus it was a trustee for the defendant.

But it is said that this situation has been changed by events that transpired after the assignment of the judgment and after the collection and receipt of the money thereon by the

plaintiff. It is conceded that two of the obligations, to secure which the fund was created by the assignment from the defendant, have ceased to exist, since one of the bonds has been discharged by a direction of the court for a new trial of the action and the loan has been paid in full. The third obligation, however, still remains in full force, and the question is whether the plaintiff may not assert its right to the possession of the fund in the same character or capacity in which it was originally received, so long as any of the obligations for the security and benefit of which it was created remain undischarged. The outstanding obligation is somewhat peculiar. It is executed by the plaintiff corporation as principal and two individual sureties. It may be conceded that the latter are not liable on it until after default of the former, though that is by no means clear, since all were sureties as to the plaintiff in the bond, but the fact still remains that the pledge of the judgment, according to the fair scope and meaning of the instrument creating the pledge, was intended to indemnify the parties to that bond from all loss and it is still an existing valid obligation upon which the sureties may be made liable. It may very well be that the individual sureties executed the bond with the plaintiff upon the faith and credit of this fund and they have the right to object to its waste and depletion by the trustee or any one else and may call upon the trustee to protect it from diversion to the private use of the defendant. So that whatever relation the plaintiff held to this fund, when it received it, that relation has not been changed but still exists.

One of the defenses set up in the answer was that the defendant has been released and discharged from all liability to account for the fund abstracted from the plaintiff's custody. That, of course, must mean that the defendant has a release and discharge from the plaintiff in the same character and capacity in which it sues, and it is said that this defense is admitted upon the record, since it is not put in issue by the reply. If the plaintiff's counsel, after stating a good cause of action in his complaint, has admitted upon the record that the

23

defendant has been released and discharged, of course he was properly nonsuited; but that does not seem to me to be the situation.   If the defendant by his control of the corporate action of the plaintiff was enabled to procure a resolution to be passed, or a release to be executed,. surrendering the pledge, or discharging him from liability for the conversion of the money, that would not affect the parties for whose benefit the trust was created, unless they consented to it.   The special defense states nothing with respect to the release except a simple corporate act to which the beneficiaries of the trust were not parties.   It alleges that on a certain day mutual releases passed between the parties, but the pleading does not, in terms, state that either party released any claim held as trustee or for the benefit of others.   The plaintiff, by way of reply to this defense, denied that any such release or discharge was ever made, adding to the broad terms of the denial the following qualifying words, " *if the defendant by said allegation intends to charge that. thereby claims, demands and causes of action of the plaintiff as trustee, against the defendant, were cancelled or discharged.*"   These were unnecessary or redundant words, but they did not vitiate the pleading at the trial.   They would probably have been stricken out on a motion to correct it, but a demurrer to such a pleading cannot prevail, and the motion for a nonsuit, so far as it related to the pleadings, must be treated as a demurrer interposed at the trial.   So there was a clear issue of fact on the face of the pleadings with respect to the release, and there is nothing in the opening of counsel that helps the defendant upon that issue.

The case, when viewed broadly in the light of the pleadings and the proceedings at the trial, comes to this : The plaintiff received certain property from the defendant, under a written instrument which required it to hold the same for certain specified purposes, that is to say, for its own protection and indemnity and the protection and indemnity of others who became defendant's sureties on the faith of the pledge. While one of these surety bonds was outstanding and undis-

charged the defendant, as the plaintiff's agent or president, appropriated the fund to his own use. In a suit by the plaintiff to reclaim the fund it has been nonsuited on the sole ground that it sued as trustee, and in that character had stated no cause of action. Whatever may appear to be the real merits of this case when regularly tried and submitted, we think this ruling was erroneous. It is not necessary to use any particular formula of words in order to create a trust of personal property, and it is not even necessary that such a trust should be evidenced by any writing. Trust relations will be implied when it appears that such was the intention of the parties and when the nature of the transaction is such as to justify or require it. (*Morse* v. *Morse,* 85 N. Y. 53; *Gilman* v. *McArdle,* 99 N. Y. 451; *Day* v. *Roth,* 18 N. Y. 448; *Matter of Carpenter,* 131 N. Y. 86; *Woodward* v. *James,* 115 N. Y. 346; *Gillet* v. *Bank of America,* 160 N. Y. 549.) It is quite clear that the contract, which is the basis of the action, was made, not for the benefit of the plaintiff alone, but for the benefit of others as well, including the defendant, who was entitled to the surplus. The plaintiff did not cease to be a trustee when one of the bonds was discharged and the loan for which the pledge was made in part had been paid. So long as the other bond remained unsatisfied the plaintiff's duties and obligations and its legal relations to the fund and the parties remained unchanged, and what they were originally. While the plaintiff is described as the principal in that bond, the terms of the writing are broad enough to give the individual sureties an interest in the collateral and the right to protect it. It is not true, we think, that at the time of the commencement of the action the plaintiff could hold the fund only in its own right and for its own protection. That contention ignores the manifest purpose of the pledge expressed or implied in the writing to secure and indemnify *all* the sureties on the bond and not merely one of them who was described as principal.

If there could be any doubt about this proposition, founded upon the general words of the written assignment, it is

removed by the very last clause, which in terms provides that the plaintiff is to apply the moneys collected on the judgment ".for the purposes above mentioned," and for the benefit of the sureties (naming them) " as their interest may appear at the time."　These words plainly mean that the pledge was not merely for the benefit of one of the sureties on the outstanding bond designated therein as " principal," but for the benefit of all, as their interest might appear.

The defendant had no right to the fund so long as any of the sureties on that bond remained liable.　The sureties all executed the bond with knowledge of the pledge of the fund in question and presumptively on the faith of it and had the right to object to any release of it by the plaintiff.　( *Wetmore* v. *Porter*, 92 N. Y. 76.)　It may be that there is a defense to this action when all the numerous allegations contained in the voluminous pleadings, on both sides, have been tried and decided; but it is quite clear, we think, that the defendant was not entitled to a nonsuit by reason of anything stated in the pleadings, or admitted in the opening of counsel.

The judgment should be reversed and a new trial granted, costs to abide the event.

Cullen, J. (dissenting).　There are two questions presented on this appeal and both arise on the pleadings.　The first is whether the complaint set forth a good cause of action against the defendant, the second whether that cause of action had been released previous to the institution of the suit.　If either of these questions was decided against the plaintiff it would have been unreasonable for the trial court to proceed with the trial, for in such event there could be nothing to try.

The complaint was dismissed at Trial Term on the ground that the plaintiff sued as trustee, while the cause of action set forth in the complaint was in favor of the plaintiff individually.　The Appellate Division by a divided court has on this theory affirmed the action of the Trial Term.　In this view I do not concur.　It is true the title of the summons and that

of the complaint state the name of the plaintiff as " Hoffman
House, New York, as Trustee," but as trustee for whom or
for what is not stated. The complaint sets ˙forth the instru-
ment under which the judgment recovered by the defendant
against Mackey and others was assigned to the plaintiff ; it
states the collection of the judgment by the plaintiff and
the subsequent appropriation of the fund by the defendant,
who was at the time an officer of the plaintiff and in control
of its management, and it prays judgment that the defendant
pay " to the plaintiff Hoffman House, New York," the sum
of thirty-five thousand dollars with interest, being the amount
for which the plaintiff was liable on a bond which it had pre-
viously given. Thus the complaint stated all the facts, and if
from those facts there arose a good cause of action in favor
of the plaintiff individually it was entitled to recover in its
own right, despite its description as trustee in the title of the
summons and complaint. (*Litchfield* v. *Flint*, 104 N. Y. 543 ;
see cases there cited.) This would seem to have been the
notion of the pleader who drew the answer, for in that answer
there are alleged both a personal release from the plaintiff
and a counterclaim against the plaintiff individually. That
the complaint stated a good cause of action in favor of
the plaintiff either in one capacity or the other cannot be
questioned.

To the allegation of the release the plaintiff replied by
denying that it thereby discharged the defendant from any
cause of action which it as trustee had against him, and it also
set up in bar of the defendant's counterclaim the same settle-
ment, alleging that thereby the plaintiff released the defend-
ant from all causes of action against him in favor of the
plaintiff in its individual capacity, and that in consideration
thereof the plaintiff was discharged from all liability to the
defendant. It is, therefore, clear that by the pleadings it
appeared that all personal claims or demands against the
defendant had been discharged, and there remains the sole
question whether the claim of the plaintiff to a portion of the
proceeds of the assigned judgment was in its own right or for

the benefit of others.    It seems to me unnecessary to consider
whether by the instrument of assignment the plaintiff was
created a trustee or not.    The first and third of the liabilities
as indemnity against which the Mackey judgment was assigned
had been discharged by the defendant.    He had succeeded in
setting aside the judgment for which McDonald and Leary
were sureties on appeal.    He had paid Leary the debt of
twenty-five thousand dollars specified in the assignment.    The
only purpose still outstanding was the second : " To secure the
said Hoffman House against any liability heretofore incurred
or which it may be under by reason of its being a surety or
liable in a proceeding in which the Farmers' Loan & Trust
Company, as trustee, was plaintiff, and the Hoffman House
of New Jersey was defendant, which obligation was for about
thirty-five thousand dollars ($35,000), originally."    It is the
sum of money requisite to discharge this obligation and only
this sum that the plaintiff seeks to recover.    If this obligation
inured to the benefit of the plaintiff alone, it is plain that the
claim against the defendant for the conversion of the fund was
the personal claim of the plaintiff, and.it is admitted that all
such claims held by either party to the action against the other
were released and discharged by the settlement of September
25th, 1897.    If a recovery is had in this action and the money
applied to the satisfaction of the bond it will inure directly
to the advantage of plaintiff, who will obtain thirty-five
thousand dollars from the defendant, although the parties
agreed to release their several demands.    The theory on
which such result is sought to be accomplished is that the
plaintiff is a trustee, not only for itself, but for the persons
who became sureties on the bond it gave in regard to the
liabilities specified in the assignment.    That a party cannot
well be trustee for himself is settled by the decision of this
court in *Greene* v. *Greene* (125 N. Y. 506).    Though if the
contrary were the law I do not see how it would affect the
question.    So far as the plaintiff was a beneficiary under the
assignment, even if the assignment had been made to another
as trustee, it could release the defendant from any conversion

of the trust fund; and if the plaintiff was the sole beneficiary its release would be a bar to any action by the trustee. The controversy, therefore, becomes further narrowed to the single question whether the assignment was for the benefit of the sureties of the plaintiff and created a trust in their favor. It would seem that even a casual reading of the instrument disposes of such a contention. The purpose of the assignment is said to be "to secure the said Hoffman House against any liability." It is not stated to be for the purpose of indemnifying the sureties. There is no reference to the sureties, nor does it appear from the instrument that there were any such sureties. The final clause of the assignment does not in any way extend or amplify the objects before specified. The learned prevailing opinion is erroneous where it is stated that the assignment provides that the plaintiff is to apply the moneys collected on the judgment "for the benefit of the sureties (naming them) 'as their interest may appear.'" The provision is that the moneys shall be applied "for the benefit of the said Ronald T. McDonald, the Hoffman House and James D. Leary as their interest may appear at the time." McDonald was not a surety on the bond given by the plaintiff. James D. Leary was one of such sureties, and Daniel J. Leary was the other, but the name of the latter nowhere appears in the assignment. If it was the intention, by this clause, to indemnify the plaintiff's sureties, why was not Daniel J. Leary mentioned as well as James D. Leary, and why was McDonald mentioned at all? The specification of McDonald, the Hoffman House and Leary was, however, entirely accurate on the assumption that the assignment was intended to secure only the parties named in it against the liabilities therein specified, for McDonald and James D. Leary were the sureties on the appeal bond, the Hoffman House was principal on the bond given in the foreclosure suit and James D. Leary was a creditor of the defendant for the sum of twenty-five thousand dollars. There is this further suggestion to be made: If the plaintiff recovers this claim as trustee for its sureties, will that relieve the plaintiff from its primary obliga-

tion to pay its own bond, or if the recovery is applied toward the satisfaction of that bond in exoneration of the sureties, will the defendant be subrogated to the claim of those sureties against the plaintiff?

The judgment appealed from should be affirmed, with costs.

BARTLETT, HAIGHT and VANN, JJ., concur with O'BRIEN, J.; PARKER, Ch. J., and WERNER, J., concur with CULLEN, J.

Judgment reversed, etc.