MONTGOMERY v. BOYD et al.

(Supreme Court, Appellate Division, First Department.   January 9, 1903.)

1. DISMISSAL—APPEAL.
   On appeal from the dismissal of an action on complaint and opening, allegations of fact must be treated as true.

2. TRUST IN PERSONALTY—FRAUDULENT TRANSFER—ACTION TO SET ASIDE—FOREIGN EXECUTORS—REFUSAL TO TAKE OUT ANCILLARY LETTERS.
   Personal Property Law 1897, § 7, provides that executors may, for the benefit of creditors or others interested in personal property held in trust, avoid any transfer made in fraud of the rights of any creditor, etc., and that a creditor of a deceased insolvent debtor may, for the benefit of himself and other creditors, maintain an action to set aside a fraudulent conveyance. Foreign executors of a nonresident decedent refused requests of a resident creditor of their decedent to take out ancillary letters, and the creditor sued to set aside, as fraudulent, decedent's transfer of his beneficial interest in personalty held in trust, located in this state. *Held* that, as the foreign executors could not have sued to set aside such fraudulent transfer without taking out ancillary letters, their refusal so to do was equivalent to a refusal to bring action to set aside the 'fraudulent transfer, so as to entitle the domestic creditor to sue, even though a refusal of the executors to sue were a condition precedent to his right of action.

3. SAME—CERTIFICATES REPRESENTING BENEFICIAL INTEREST—DISPOSITION.
   A domestic creditor of a foreign decedent sued to set aside an alleged fraudulent transfer by decedent of his beneficial interest in personalty held in trust, located in this state. Decedent's interest in the trust property was evidenced by certain certificates, and it was alleged that the foreign executors of decedent had taken possession of these certificates, and disposed of them for the benefit of the estate. *Held*, that this allegation was not fatal to the cause of action, because showing that the executors had performed their duty with respect to the trust property, inasmuch as the certificates were merely muniments of ownership of the beneficial interest in the trust property, while the resident creditor's suit sought to reach the corporeal property itself.

4. SAME—RESIDENT CREDITOR—RIGHT TO SUE.
   A resident creditor of a foreign decedent sued to set aside an alleged fraudulent transfer by the decedent of his beneficial interest in personalty held in trust, located in the state, and to subject such property to the satisfaction of his claim; making the executors and subsequent transferees parties. The suit was under Personal Property Law 1897, § 7. It was alleged that the foreign executors appointed by decedent had refused to take out ancillary letters in this state. *Held* that the circumstances were such as to justify the maintenance of a suit against the foreign executors, to the extent of the trust property within this jurisdiction.

5. SAME—PARTIES.
   Though decedent had transferred his beneficial interest in the trust property, the executors were necessary parties, as under the statute the existence of a debt against the estate was to be proven in the action.

6. SAME—APPEARANCE.
   Under Code Civ. Proc. § 1817, declaring that in an action against two or more executors, representing the same decedent, all are to be 'considered as one person, and those who are first served with process or first appear must answer, a general appearance by one of two foreign executors, sued jointly, is sufficient to bind both of them.

7. SAME—JURY TRIAL.
   Decedent's executors in an action under Personal Property Act, § 7, are not deprived of their right of trial by jury of the issue of fact as to the existence of the claim against decedent, but, under the direct pro-

visions of Code Civ. Proc. § 970, are entitled, on proper application, to an order for a jury trial of that issue.

Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from special term, New York county.

Action by James L. Montgomery against Robert N. Boyd and others. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Stephen H. Olin, for appellant.

Edward C. Perkins, for respondents.

PATTERSON, J. The complaint in this action was dismissed at the trial on the pleadings and on the opening of the plaintiff's counsel. Those pleadings, and the schedules annexed thereto, and the opening address of the plaintiff's counsel, constitute a record of nearly 300 pages of printed matter, and relate to transactions of a very complicated character, with very extended ramifications. It is true that a great deal of the matter contained in the pleadings may be discarded as surplusage. There is difficulty in separating the useful from the useless, but utile per inutile non vitiatur.

The practice of dismissing a complaint on the opening of counsel is legitimate, and the reasons for its allowance are forcibly stated by Mr. Justice Field in Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539; but we have had occasion heretofore to say that it is a practice not to be encouraged. Garrison v. McCullough, 28 App. Div. 467, 51 N. Y. Supp. 128; Denenfeld v. Baumann, 40 App. Div. 502, 58 N. Y. Supp. 110. In the recent case of Hoffman House v. Foote, 172 N. Y. 350, 65 N. E. 169, the court says that the practice of disposing of cases upon the mere opening of counsel is generally a very unsafe method of deciding controversies, where there is or ever was anything to decide, and that it cannot be resorted to in many cases with justice to the parties, unless the counsel stating the case to the jury deliberately and intentionally states or admits some fact that, in any view of the case, is fatal to the action. This case presents a striking illustration of the propriety of those remarks. The learned judge at the trial dismissed the complaint on two specific grounds, neither of which is tenable. They are, in substance and effect, that the plaintiff could not maintain his action because he did not allege that the executors of James McHenry had not failed to act with reference to the matters set forth in the complaint as constituting the plaintiff's cause of action; and, secondly, because the plaintiff did allege in the complaint that the executors did in fact act. The cause of action asserted in the complaint is not one that inhered exclusively in the executors of James McHenry, nor were the acts of such executors, as we shall presently see, of such a character as to extinguish a cause of action which belonged to this plaintiff. A condensed statement of the material facts constituting the plaintiff's cause of action will suffice to show that. The plaintiff is the assignee of claims or money demands against James McHenry, a nonresident

of the state of New York. Mr. McHenry lived in London for 20 years prior to his death, which occurred in May, 1891. He had no assets in the state of New York, the actual legal title to which was vested in him. He left a last will and testament, in which the defendants McDermott and Boyd were appointed executors. They have been, and at the time of the commencement of this action were, acting as such executors in England. They have never taken out here ancillary letters under section 2695, Code Civ. Proc., and no such letters have ever been issued in this state, although the foreign executors have been requested by this plaintiff to take them out. In 1871 Mr. McHenry and Thomas William Kennard, each owning a large amount of real and personal property in the states of New York, New Jersey, Pennsylvania, and Ohio, created a trust of such property for certain purposes, and conveyed all of their property to Samuel L. M. Barlow and Charles Day, by a deed in which it was recited that the trust property was to be represented by 400 certificates, of $5,000 each, to be issued by the trustees, and which were to be regarded as personal property. Certificates were prepared and issued, and Mr. McHenry was entitled to, and did, receive from the trustees 150 of them. On the 26th of May, 1874, Mr. McHenry, being then indebted to the plaintiff's assignors, and financially embarrassed and insolvent, transferred 100 of the certificates to Benjamin Moran, of London, who in 1878, at his request, assigned them to Leonard J. Woodman, of London, who died in 1895. It appears, inferentially at least, that the 100 shares were registered in the books of the trustees in the names of Moran and Woodman in succession, and that they stood so registered in 1895, at the time of Woodman's death. The registered owner of the shares was a beneficiary of the trust. Barlow and Day, the original trustees, are both dead, and the defendants Edward C. Perkins and Thomas P. Fowler are their successors in the trust, and have in their possession personal property, the subject of the trust, and applicable to what were the McHenry shares, to the amount at least of $50,000.

It is alleged in the complaint, in substance, that the assignment by McHenry to Moran was to the latter as trustee under and pursuant to a deed of trust made in consideration of love and affection, by way of postnuptial settlement, and by the assignment Moran held the certificates in trust for McHenry's wife and children, with power of appointment to the wife, and, in the event of there being no children and no appointment, the shares were to revert to James McHenry, and that Woodman merely took the place of Moran in the trust. It is further alleged that Mrs. McHenry died in the year 1883, leaving no children, her surviving, and that a few days before her death she executed an instrument appointing the shares to the son-in-law of James McHenry and to Edward McDermott, the father of the defendant Edward R. McDermott; that the settlement and appointment were without consideration, and were intended to defraud the creditors of McHenry, who was then insolvent, and are voidable as to them; that after Mrs. McHenry's death Mr. McHenry assumed to be the proprietor of the shares, and they were treated by his ex-

79 N.Y.S.—56

ecutors as part of his estate. In May, 1893, McHenry's executors entered into an agreement in writing, in which Mr. McHenry's son-in-law and Edward McDermott joined, for the sale of the certificates and property to the defendant Henry Bischoffsheim. By the agreement of sale, Mr. Bischoffsheim was to pay certain debts of Mr. McHenry, and certain sums in cash to his executors, and also a contingent part of the proceeds of the certificates. The executors retained the right to the sum of £4,000 in the hands of Perkins and Fowler, trustees, being a portion of $50,000 which they hold in their hands, applicable to the 100 certificates, as the proceeds of sale of trust property, which had been appropriated and set aside as dividends payable on such 100 certificates. Mr. McHenry's executors applied to the court of chancery in England for its approval of the sale, which was given. The plaintiff avers that upon the death of James McHenry the assets and property in the hands of Perkins and Fowler, trustees, and represented by the said 100 certificates, being property and assets within this jurisdiction belonging to the deceased debtor, became upon his death a trust fund, charged by operation of law with a lien in favor of the creditors of the deceased debtor, and that it became the duty of Robert Boyd and Edward McDermott to cause the assets to be administered in accordance with the Code of Civil Procedure. Under these allegations, which we must assume to be true, as would be done on demurrer, the plaintiff brings this action, for the benefit of all creditors of James McHenry, to reach the property in the hands of Perkins and Fowler, trustees, and to have that property applied pro rata to the payment of the indebtedness due by McHenry to himself and other creditors, on the ground that the transfer of his interest in the trust property originally by McHenry for the benefit of his wife and her appointees was fraudulent and void as against such creditors, and was made with the intent to hinder, delay, and defraud them, and that all the various transfers of the property are affected by that fraud, and the defendants are making an effort to remove the trust property from this jurisdiction without administration here, and in disregard of the rights of creditors resident here.

The plaintiff's right to maintain the action as one to set aside fraudulent transfers is derived, if not from settled rules of law, then from statutory authority. Section 7 of the personal property law of 1897 provides that an executor, administrator, receiver, assignee, or trustee may, for the benefit of creditors or others interested in personal property held in trust, disaffirm, treat as void, and resist any act done or transfer or agreement made in fraud of the rights of any creditor, including himself, interested in such estate or property; and a person who fraudulently receives, takes, or in any manner interferes with personal property of a deceased person, or an insolvent corporation, association, partnership, or individual, is liable to such executor, administrator, receiver, or person for the sum or the value thereof, or damages caused by such act to the trust estate, and that a creditor of a deceased insolvent debtor, having a claim against the estate of such debtor exceeding the amount of $100, may, without obtaining judgment upon such claim, in like manner, for the benefit of himself and other creditors interested in such estate, dis-

affirm, treat as void, and resist any act done, or conveyance, transfer, or agreement made, in fraud of creditors, or maintain an action to set aside such act, conveyance, transfer, or agreement. Such claim in dispute may be established in such action. The judgment in such action may provide for the sale of the property involved, and the conveyance or transfer thereof of said estate, and that the proceeds be brought into court, or paid into the proper surrogate's court, to be administered according to law. We think this statute gave the plaintiff authority to institute this action, in the aspect above mentioned, inasmuch as the trust estate in the hands of the trustees here consists, at least in part, of personal property. The right of a creditor to maintain the action seems to be separated from the remedy given to an executor or administrator; but, even if that were not so, it sufficiently appears in the complaint for the purposes of this action that Mr. McHenry's executors declined to take those steps which were necessary to enable them to bring an action, for they refused to take out ancillary letters, or to have those letters taken out, and that would be necessary in order to give them a standing in court to maintain an action.

As to the second ground upon which the complaint was dismissed, namely, that the executors did in fact act and take possession of the fund, and disposed of it for the benefit of the estate, that is not shown by the complaint or the opening of counsel, for the reason that the fund does not consist of the certificates, but is the property itself, or its avails in the hands of the trustees; the certificates being muniments of ownership of the beneficial interest in the trust property. Although the parties to the trust deed did agree among themselves that these certificates should be regarded for all purposes as personal property, they could not impress upon them the character of negotiability, nor change the inherent character of the trust property in the hands of trustees. If the plaintiff has any rights at all, they are not limited to the certificates, but they attach to the trust fund or trust property in the hands of the trustees. A purchaser of the certificates only became a beneficiary of the trust, and an assignee of an interest therein; but it is alleged in the complaint that the sale was sanctioned by the English court, on the assumption that the certificates and property were liable in the first instance to the satisfaction of American debts secured by attachment of the plaintiff. We think it may be spelled out from the allegations of the complaint that it is charged that the purchaser of the certificates took them with notice. Stated in a few words, the position assumed by the plaintiff, under the allegations of the complaint and the inferences which legitimately may be deduced therefrom, is this: He, on his own behalf and on behalf of other creditors, seeks to reach a fund in this state which is in the hands of trustees, in which fund his debtor was interested. That debtor made an assignment of that interest in the fund with the intent to hinder, delay, and defeat his creditors, and all subsequent transfers are, in fact and law, affected by that fraud. Debts are, generally speaking, an equitable lien upon property fraudulently transferred by a debtor. Bank v. Olcott, 46 N. Y. 17. What the plaintiff now seeks is to have the court, upon a showing

that the facts exist which give the lien, recognize and enforce that lien.

It is true that there is in this complaint, and the schedules annexed to it, a great mass of matter which may be immaterial to the real cause of action, but, when that cause of action is ascertained, there may be culled from the allegations of the complaint a sufficient statement of it; and it seems to us that the only question remaining relates to jurisdiction having been acquired over the foreign executors of Mr. McHenry's will. That subject was not passed upon by the court at the trial, so far as the record shows, but it was urged by the defendants' counsel that jurisdiction had not been obtained; and, if that point is well taken, the action cannot be sustained. Recurring to the complaint, we find that it contains allegations beyond those which relate to the alleged fraudulent character of the transfer of Mr. McHenry's interest in the trust property, and which other allegations are set forth to give the court jurisdiction under extraordinary circumstances. It is alleged that there is a fund within this state which should be applied in equity to the payment of the creditors of Mr. McHenry resident in this state, and that such fund cannot be reached through the ordinary processes of administration, by reason of a defect in the law. No one can take out administration here except through or by the voluntary action of the foreign executors; Mr. McHenry having been a nonresident, dying abroad, testate. The fund may be withdrawn from this jurisdiction, and the domestic creditors remain remediless, unless a court of equity, to the extent that may be necessary for the purposes of this action, would undertake administration. It is true that, so far as title to Mr. McHenry's interest in the trust fund and property is concerned, that may now be out of the executors and vested in Mr. Bischoffsheim; but Mr. McHenry's executors should be parties to the action because it is necessary for the plaintiff to establish the existence of an indebtedness against their testator, and, if that interest is subjected to the claims of resident creditors, those executors may be liable over to their transferee of that interest.

It is not to be controverted that an action will not lie at law against foreign executors for the enforcement of a debt against their testator, or to charge the estate in their hands with a liability of such testator growing out of a contract made by him, but suits in equity may be maintained against foreign executors under exceptional circumstances. Slatter v. Carroll, 2 Sandf. Ch. 573; McNamara v. Dwyer, 7 Paige, 239, 32 Am. Dec. 627; Hopper v. Hopper (Sup.) 3 N. Y. Supp. 640; Gulick v. Gulick, 33 Barb. 95; Marshall v. Bresler, 1 How. Prac. (N. S.) 217; Field v. Gibson, 56 How. Prac. 232. These cases are cited upon the proposition that foreign executors may be sued in equity under special circumstances, although, with the exception of Slatter v. Carroll, supra, they have no direct bearing upon the right of the plaintiff to maintain this particular action. But what is the exact situation here? Unless this fund can be reached in a court of equity in this state, this plaintiff is without remedy, and must be dismissed because of the impotency of the court to afford him relief, which is simply a confession of a failure of justice, and of the inability of the state to protect its citizens in the enforcement of their conceded rights.

Here is property in the hands of the defendant trustees. Mr..
McHenry's creditors have, as we have seen, an equitable lien on his
interest in that trust fund. They claim under McHenry. It is a
settled rule of law of this state that a domestic creditor of a nonresi-
dent decedent will not be compelled to go to a foreign jurisdiction if
there be property here which can be applied to the satisfaction of his
claim. We therefore assume the right to administer the property here
for the benefit of domestic creditors, and to impress upon it a lien or
trust for their benefit. Maas v. Bank, 73 App. Div. 524, 77 N. Y.
Supp. 256. No claim is made generally against the estate of Mr.
McHenry. No judgment is sought which might be made the basis
of an action in a foreign court against the executors, but their pres-
ence here is required simply because the existence of a debt must be
proven to enable the plaintiff to set aside the alleged fraudulent con-
veyance by McHenry, and to enable them to dispute the existence of
an equitable lien upon this trust fund if they choose to do so. They
have undertaken to dispose of a fund within this state without ad-
ministration here. Their acts as executors with respect to that fund
within the jurisdiction of this court, liable to resident creditors, are
made the subject of inquiry. That a foreign executor could be made
to account for assets brought within this jurisdiction was held in some
of the cases above cited. We see no reason why the same rule should
not apply to assets which were here when the foreign executors might
first have become entitled to them, and which they left within this juris-
diction.

We think this case is to be regarded, under its peculiar facts, as an
exceptional one, and such as would authorize the maintenance of a
suit against the foreign executors; the right sought to be enforced in
the action being one strictly limited to certain property within the
jurisdiction of the court, unadministered, and which, for the purposes
of justice, it is necessary for a court of equity to control. Both the
executors of Mr. McHenry's estate were made parties to this suit.
One of them has entered a general appearance, and that is sufficient,
under the provisions of section 1817 of the Code of Civil Procedure, to ·
bind both of them.

No question can arise here of the constitutionality of section 7 of the
personal property law. Dittmar v. Gould, 60 App. Div. 94, 69 N. Y.
Supp. 708, does not apply; and Cates v. Allen, 149 U. S. 451, 13 Sup.
Ct. 977, 37 L. Ed. 804, was decided solely upon the ground that, the
distinction between legal and equitable rights and remedies being
rigidly maintained in the courts of the United States, a suit in equity
by a general creditor to· set aside fraudulent conveyances of his debtor
could not be sustained, in the United States courts that remedy being
available only to a judgment creditor. In the present case the
McHenry executors would not be deprived of the right to· a trial by
jury of an issue, if they choose to raise it, respecting the existence of
an indebtedness of McHenry to the plaintiff's assignors. If as to that
they are entitled to a jury trial as a matter of right, section 970 of the
Code of Civil Procedure protects that right, and requires the court,
upon proper application, to make an order directing that method of
trial; and the verdict of the jury on that issue would be conclusive

in the action, unless it be set aside or a new trial granted. Any objection to a defect of parties defendant must be taken by demurrer.

We are therefore of the opinion that the judgment dismissing the complaint should be reversed, and a new trial ordered, with costs to appellant to abide the event.

O'BRIEN and LAUGHLIN, JJ., concur. VAN BRUNT, P. J., and McLAUGHLIN, J., dissent.