OPINION OF THE COURT
Oscar Murov, J.
MALERBA V WARREN
Plaintiffs bring this action for trespass, fraud, breach of covenant, violation of zoning ordinances and injunction arising out of defendants’ placing a cottage on their own property in such a manner as to encroach on plaintiffs’ adjacent property, to obstruct their view of the ocean and in violation of town ordinances of the Town of East Hampton that, it is claimed, prohibit the presence of the structure in the area.
FACTS
Plaintiffs are the owners in fee of property (hereinafter referred to as Lot No. 2) that fronts on the Atlantic Ocean in the Town of East Hampton, Long Island, New York. Plaintiffs acquired title by deed from defendants on or about March 28, 1978. Lot No. 2 is one of four such lots originally owned as one parcel by Harry Lee Warren, his wife and certain of their children. The original building on the property prior to its subdivision in 1971 and its subsequent sale to plaintiffs stood high on a series of dunes with a panoramic view. A small cottage also stood on the north side below a steep grade of the dunes to the southwest, hidden from view.
*787 In 1977, defendant Warren applied for a variance on the original parcel seeking to have the acreage divided into four one-acre parcels numbering the four lots from west to east facing the ocean, one through four. The town board granted said application on condition that the applicant remove said cottage from the premises before accomplishing the intended subdivision. The cottage in dispute was then located on the boundary line between Lots Nos. 1 and 2. Plaintiffs decided to purchase some of this land from defendants and entered into negotiations with them. During the course of the negotiations defendant Harry Warren represented that he was removing said cottage to other property that he owned at a later date. A short time later plaintiffs observed that the cottage had been removed from the boundary line and put up on wheels for removal and was then situated on Lot No. 4. Subsequent to the closing of title, however, plaintiffs discovered that defendant had moved said cottage to Lot No. 3 where defendant had an existing building and, also, that he had excavated and built a permanent foundation for the cottage which now stood in such a position as to block plaintiffs’ view of the ocean. Furthermore, in building the foundation, defendants had dug out a portion of plaintiffs’ shrubs and ground cover and had undermined the dunes that provided lateral support for plaintiffs’ structure.
Plaintiffs claim that in addition to Warren’s cottage being placed in such a manner as to be esthetically unpleasant, the location of said cottage was the preventing factor in the Malerbas’ being unable to rent their premises for the 1979 and 1980 summer seasons. Thereafter, plaintiffs complained to the town officials about the structure and threatened to commence a CPLR article 78 proceeding against the town unless it took action to enforce the building and zoning codes. Shortly thereafter summons were issued to defendant Harry Warren for violation of the town code and a conviction resulted. Defendant Warren thereafter sought to designate the cottage as a “storage shed” and thereafter an “accessory building” on subsequent applications to maintain the structure in place. However, said applications were denied because the building was too substantial to support either designation. It should be *788 noted that the structure contained a full bathroom and two bedrooms.
When it appeared that defendant Harry Warren was not about to remove the offending structure to satisfy either the Malerbas or the Town of East Hampton, plaintiffs commenced an action against the Warrens.
A trial was had in which extensive testimony was taken and numerous documents were admitted into evidence. Based on the record, the court decides as follows:
A. PLAINTIFFS ARE ENTITLED TO MONEY DAMAGES FROM DEFENDANTS FOR TRESPASS
At trial it was adduced that defendants entered 10 to 15 feet onto plaintiffs’ property removing a large portion of their dune, removing foliage, beach grass and other shrubbery and through their excavations interfered with plaintiffs’ lateral support. Trespass generally is interference with a person’s right to possession either by unlawful act or by lawful act performed in an unlawful manner. (Annutto v Town of Herkimer, 56 Misc 2d 186, affd in part and revd in part 31 AD2d 733.) Any unauthorized entry upon the land of another constitutes a trespass (Rager v McCloskey, 305 NY 75; Restatement, Torts 2d, § 163). An actionable trespass must necessarily involve a wrongful or unjustifiable entry upon the land of another or the performance of some improper, careless, wrongful or unnecessary act thereon (see 61 NY Jur, Trespass, § 11). “Trespass is an intentional harm at least to this extent: while the trespasser, to be liable, need not intend or expect the damaging consequences of his intrusion, he must intend the act which amounts to or produces the unlawful invasion and the intrusion must at least be the immediate or inevitable consequence of what he wilfully does, or which he does so negligently as to amount to willfulness”. (Phillips v Sun Oil Co., 307 NY 328.) Here, there was unlawful entry by defendant upon land owned by plaintiff and removal of ground cover, dunes, shrubbery, etc. Furthermore, the commission of said trespass was, in the eyes of the law, the act of all defendants and all are jointly liable. (Goswami v H & D Constr. Co., 78 Misc 2d 99.)
The next question is the measure of damages. Compensatory damages for trespass are limited to consequences *789 flowing from interference with possession and not for separate acts more properly allocated under other categories of liability. (Costlow v Cusimano, 34 AD2d 191.) Such compensatory damages the court finds constitute the following: $3,000 for costs of restoration of the shrubs and beach grass, and $2,900 for the costs of bulkheading the dune and for the fill and topsoil. Since these are damages that are capable of repair the court will not award damages for diminution in value of the property. (Tompkins v State of New York, 33 Misc 2d 828.) Plaintiffs also contend that the measure of damages in a trespass case is ordinarily the diminution in the rental or useful value of the premises caused by the trespass indicating the property “as is”, and they cite Eisen v County of Westchester (69 AD2d 895) in support of their contention. In that case, however, there was an actual trespass on the plaintiffs’ lands by virtue of defendant’s channeling and diverting waters onto plaintiffs’ lands which was the approximate cause of the damage. Here, however, the act which plaintiffs claim caused a diminution in rental value was the placing of an edifice on defendants’ adjoining land.
This, the court holds, does not constitute an entry onto plaintiffs’ lands giving rise to such a measure of damages. The court does, however, find that plaintiffs are entitled to punitive or exemplary damages in the amount of $10,000. In order to recover punitive damages for a trespass on real property, a plaintiff has the burden of proving (1) actual malice which involves an intentional wrongdoing, or (2) such, conduct as may be deemed to be tantamount to a wanton'and willful or a reckless disregard of plaintiffs’ rights. (MacKennan v Bern Realty Co., 30 AD2d 679.) In the instant case, defendants refused to correct the complained of condition even despite a guilty plea regarding same in violation of Town of East Hampton ordinances. Construction of the foundation for the cottage even continued despite town “stop work” orders. Clearly, this constitutes at the very least reckless disregard of plaintiffs’ rights giving rise to punitive damages in the afore-stated amount. Plaintiffs’ request for treble damages for trespass based upon RPAPL 861 is without merit if for no other reason than “that the section relied upon is restricted to *790 the removal of trees, and timber”. (Rakosi v General Elec. Credit Corp., 59 AD2d 553, 555.)
B. DEFENDANTS ARE GUILTY OF FRAUD
As a general rule, all promises, warranties and representations made prior to the contract are deemed merged therein (Strauss v Levitt & Sons, 244 App Div 739). To maintain an action based on fraudulent representation whether it be for the rescission of the contract or, as here, in tort for damages, it is sufficient to show that defendant knowingly uttered a falsehood intending to deprive plaintiff of a benefit, and that plaintiff was thereby deceived and damaged. (See Brackett v Griswold, 112 NY 454; Hadcock v Osmer, 153 NY 604; 1 Harper and James, Law of Torts, § 7.1, pp 527-528.) The essential constituents of an action for fraud are fixed as representation of a material existing fact, falsity, scienter, deception and injury (Arthur v Griswold, 55 NY 400; see, also, Sabo v Delman, 3 NY2d 155). Accordingly, one who fraudulently makes a misrepresentation of intention for the purpose of inducing another to act or refrain from acting in reliance thereon in a business transaction is liable for the harm caused by the other’s justifiable reliance upon the misrepresentation. (Channel Master Corp. v Aluminum Ltd. Sales, 4 NY2d 403.) One who has perpetrated fraud upon another may not in the very instrument by means of which it was perpetrated contract with him for immunity against such actions (Bridger v Goldsmith, 143 NY 424). The “merger” clause contained in the agreement between the parties may not be invoked to preclude proof of fraudulent representations. Parties may not perpetrate a fraud with immunity and deprive his victim of redress by including a merger clause in the agreement. (See Sabo v Delman, supra; Tyler Realties v Roper, 17 Misc 2d 765.)
Generally speaking, a landowner may erect a structure on his own land for the express purpose of shutting out the light and air from the adjoining land without being liable to an action therefor. (Radcliff's Executors v Mayor of Brooklyn, 4 NY 195.) A person may erect any structure on his property which is not per se a nuisance although it injures another and is of no substantial benefit or value to himself and the fact that he was actuated by malice or a *791 desire to annoy is immaterial and cannot be inquired into, usually, by a court. (See 1 NY Jur 2d, Adjoining Land Owners, § 59.) However, easements of light, air and view may be created by express grant and such grants have been upheld in New York. (Irving Trust Co. v Anahma Realty Corp., 281 NY 798.) General rules of construction applicable in other cases involving deeds and other instruments in writing are applicable to express easements of light, air and view; the language of the agreement or deed would be interpreted in the light of the intention or purpose of the parties and of the conditions existing when it was made. (Irving Trust Co. v Anahma Realty Corp., 285 NY 416.)
However, as to the measure of damages, it is well established that damages may be granted in lieu of equitable relief “where the granting of equitable relief appears to be impossible or impracticable”. (Doyle v Allstate Ins. Co., 1 NY2d 439, 443; Valentine v Richardt, 126 NY 272; Calhoun v Millard, 121 NY 69.) Here, however, equitable relief is being granted by the court’s directing defendants to remove said cottage from Lot No. 3. Furthermore, under this theory the court will not award damages for lost income. The measure of damages for fraud is “indemnity for the actual pecuniary loss sustained as the direct result of the wrong”. (Reno v Bull, 226 NY 546, 553.) In cases such as the instant one, lost profit or expected profit are not properly considered as elements of damages. (Sager v Friedman, 270 NY 472; Foster v Di Paolo, 236 NY 132.) Accordingly, while defendants are guilty of fraud, the court is not able to award damages under this theory.
C. DEFENDANTS ARE GUILTY OF MAINTAINING A PRIVATE NUISANCE AND PLAINTIFFS ARE ENTITLED TO RECOVER FOR DEFENDANTS’ VIOLATION OF THE TOWN OF EAST, HAMPTON ORDINANCES
Nuisance was defined by the Court of Appeals in Little Joseph Realty v Town of Babylon, 41 NY2d 738, 744-745) as follows: “Nuisance is based upon the maxim that ‘a man shall not use his property so as to harm another’ (Joyce, Law of Nuisance, p 45; see, also, Copart Inds. v Consolidated Edison Co., 41 NY2d 564). It traditionally required that, after a balancing of risk-utility considerations, the gravity of the harm to a plaintiff be found to outweigh the *792 social usefulness of a defendant’s activity. (Prosser, Law of Torts [4th ed], p 581; see, also, Restatement, Torts 2d [Tent Draft No. 18], § 826, pp 3-4; Wade, Environmental Protection, The Common Law of Nuisance, 8 Forum 165, 171).”
In Copart Inds. v Consolidated Edison Co. (41 NY2d 564, 568) the court sought to define the “private nuisance” cause of action: “A private nuisance threatens one person or a relatively few McFarlane v City of Niagara Falls, 247 NY 340, 344), an essential feature being an interference with the use or enjoyment of land (Blessington v McCrory Stores Corp. 198 Misc 291, 299, affd 279 App Div 806, affd 305 NY 140). It is actionable by the individual person or persons whose rights have been disturbed (Restatement, Torts, notes preceeding § 822, p 217).”
Here, it has been shown that the defendants, despite repeated requests by plaintiffs and by the Town of East Hampton that they cease and desist construction, and in violation of Town of East Hampton zoning and building regulations, erected a permanent foundation and moved the cottage onto the one-acre lot adjoining plaintiffs. Furthermore, in considering whether an activity is a nuisance the court must be mindful of the location and surroundings as well as other circumstances. An activity which occurs in a particular location and surroundings may be reasonable, while the same activity in another location and in other surroundings may be a nuisance. (Town of Preble v Song Mountain, 62 Misc 2d 353.) Here, defendants’ action in placing the cottage on Lot No. 3 in the manner that they did was both illegal and injurious to plaintiffs. The record reflects that plaintiffs were unable to rent the property when the view of the ocean from same was obstructed by the setting of the cottage. The measure of damages for the nuisance is the diminution in rental value or its usable value (Woolsey v New York Elevated R.R. Co., 134 NY 323; Tom Sawyer Motor Inns v Chemung County Sewer Dist. No. 1, 33 AD2d 720; Ewanski v Solvay Process Co., 227 App Div 597). The court notes that during the 1978 summer season plaintiffs were able to rent the premises to movie actor, A1 Pacino, for the sum of $17,600. However, the premises could not be rented for the following two summer seasons because of the location of the cottage *793 which blocked full view of the ocean and denied privacy to those who did occupy said Lot No. 2. It is reasonable to assume, and there is ample testimony in the record to support the conclusion that rentals on East Hampton waterfront property increased during each of the aforesaid seasons. Accordingly, plaintiffs are awarded the sum of $18,000 representing loss of income for the summer of 1979, and the sum of $20,000 for the summer of 1980.
D. PLAINTIFFS ARE ENTITLED TO AN INJUNCTION DIRECTING DEFENDANTS TO REMOVE THE COTTAGE
Here, it would not be impossible, impracticable or unequitable for the court to order defendants to remove the cottage from Lot No. 3 (cf. Doyle v Allstate Ins. Co., 1 NY2d 439, supra; see Little Joseph Realty v Town of Babylon, 41 NY2d 738, supra; 2 Anderson, New York Zoning Law and Practice [2d ed], supra; §23.07);
The defendant, if he so pleases, can erect a tower by the bath or Babel “whose top may reach unto Heaven” (Genesis, ch 11.4) but not too close to his neighbor’s land if he covenanted to refrain from so doing. Defendants are directed to forthwith remove said cottage from Lot No. 3. Since the court has awarded substantial damages for trespass for the damage to beach grass and bulkheading, the court declines to direct defendants to enter upon plaintiffs’ premises and restore same to its original state.
E. PLAINTIFFS ARE ENTITLED TO ENFORCEMENT OF THE DEED OF COVENANTS AND RESTRICTIONS
Plaintiffs, in their last cause of action, allege a declaration of covenants and restrictions that define the minimum water frontage of each of the lots to be 100 feet.
In May, 1971, defendants unilaterally filed a new map reducing the frontage of their own Lot No. 3 to 90 feet and increasing the frontage of Lot No. 4 to 110 feet, in which condition it was subsequently sold. Plaintiffs contend that they are entitled to have said covenants and restrictions enforced in order to prevent the alleged overcrowding of the adjacent premises and thereby regulate the density of the development.
Covenants that are entered into with the design to carry out a general scheme for the improvement and develop *794 ment of real property are valid and enforceable (Korn v Campbell, 192 NY 490, 495, rearg den 193 NY 626; see Kreppel v Tucker, 225 NYS2d 708; Eppolito v Medlicott, 28 Misc 2d 43).
Therefore, it appears that here, plaintiffs are entitled to an injunction for the breach of covenant (see Kreppel v Tucker, supra), and this is so even though money damages may be insubstantial or even nonexistent (Evangelical Lutheran Church v Sahlem, 254 NY 161, 166). Defendants are directed to take all steps necessary to comply with said covenants and restrictions.
TOWN OF EAST HAMPTON V WARREN
Consolidated with the above action is an action by the Town of East Hampton to enjoin defendants from maintaining a concrete block foundation and dwelling (the cottage) moved thereon which was erected and so placed without a permit and which structures, it is alleged, are prohibited by the zoning and tidal flood hazard ordinances Of the Town of East Hampton. Said Lot No. 3 is located in a Residential A District and a single family dwelling is a permitted use thereon (East Hampton Code, § 153-18, subd [2]). It is also permitted to have “accessory buildings” thereon and section 153-18 E provides: “Accessory Buildings: The use of which is customarily incidental to that of the main building on the same lot. A main building is one in which is conducted the principal use of the lot on which it is located.”
The code also defines “single family dwelling” as follows: “Single Family Dwelling is herein defined as a structure designed for occupancy by one (1) family *** having one (1) kitchen only and no facilities that provide for independent occupancy for a second family. All rooms, except utility, must be accessible from inside the building. No accessory structure having living quarters is permitted.” (Emphasis supplied.)
Defendants challenge the validity of the town ordinance in that certain of its definitions are vague, i.e., accessory building, single family dwelling and living quarters. Zoning and building ordinances being in derogation of the common law must be strictly construed. (Allen v Adami, 39 *795 NY2d 275; Thomsom Inds. v Incorporated Vil. of Port Washington North, 27 NY2d 537; Matter of 440 East 102nd St. Corp. v Murdock, 285 NY 298; 1 Anderson, New York Zoning Law and Practice, [2d ed], § 12.01.)
A zoning ordinance to be valid must be definite and certain as to its terms so that it may be reasonably capable of comprehension. (Mallett v Village of Mamaroneck, 123 NYS2d 249, revd on other grounds 283 App Div 1094, affd 308 NY 821.) A statute is vague when its precise meaning cannot be ascertained and where men of common intelligence may differ as to its application and “ ‘must necessarily guess at its meaning’”. (Trio Distr. Corp. v City of Albany, 2 NY2d 690, 696; Strohm v Town of Islip, 206 NYS2d 452; Leroy Franz, Inc. v City of New Rochelle, 124 NYS2d 525; 5 McQuillan, Municipal Corporations [3d ed], § 15.24.)
As was stated by the United States Supreme Court in Colten v Kentucky (407 US 104, 110): “The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of common conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. *** ‘We believe that citizens who desire to obey the statute will have no difficulty in understanding it’ ”. It is clear that the intent of the Town of East Hampton is absolutely clear in its desire to prohibit two separate residential buildings in a Residence A District. This is clearly borne out in the definition of single family dwelling when it states: “No accessory structure having living quarters is permitted.” The structure in question is approximately 1,200 square feet and contains two bedrooms and toilet facilities. Defendants contend, however, that to constitute living quarters the structure must contain kitchen facilities. With this the court does not agree. See definition of “quarters” (Funk and Wagnalls, New Comprehensive International Dictionary of the English Language [encyclopedic ed], p 1032). Indeed, there is many a soldier who wished that his “living quarters” contained kitchen facilities and despite the lack thereof, a barracks was “living quarters” regardless of *796 what he thought of them. To allow the structure to remain would in effect be to permit two houses or two separate living quarters in a zone where secondary living quarters are specifically prohibited regardless of the nomenclature ascribed to the second house. Whether certain uses have become customary and accessory may involve consideration of legislative intent and particular questions of fact may require the use of discretion by administrative officials; but such determinations do not render a statute unconstitutional. (See Gray v Ward, 74 Misc 2d 50, affd 44 AD2d 597.)
The obvious legislative planning scheme in the ordinance is the recognition of residential control over a household unit in one building with all rooms accessible from inside. What is prohibited in the ordinance are separate buildings with living quarters. The reason is obvious especially in this tourist area where high rents and overnight and weekend occupancy are common with or without kitchen facilities. The court also finds that defendants are in violation of tidal flood zone requirements (Code of Town of East Hampton, § 153-34). The court holds, therefore, that the Town of East Hampton is entitled to the injunctive relief that it seeks.
Subdivision 2 of section 268 of the Town Law authorizes the town, in addition to any other remedies, to institute an appropriate action to prevent the unlawful erection, construction, alteration, conversion, maintenance or use of any land or to restrain and prevent any such violation. Without more, there is a violation in that defendants have constructed a structure without a building permit and, in fact, continued to work after a stop order. If they thought the building inspector was in error, their remedy was to appeal to the zoning board or commence an article 78 proceeding. Their remedy was certainly not to build without a permit and present a fait accompli. They have only created an additional violation of the ordinance by building without a permit.
However, the town has gone further in this case and has shown that defendants would never have been entitled to a permit to construct the foundation and cottage where they illegally placed it. Accordingly, it must be removed.
*797 Even an adjoining owner is entitled to mandatory injunction to remove a structure or use which violates a zoning ordinance. (Little Joseph Realty v Town of Babylon, 41 NY2d 738, supra; Marcus v Village of Mamaroneck, 283 NY 325; Rice v Van Vranken, 225 AD 179, affd 255 NY 541.)
Accordingly, defendants are directed to forthwith remove the cottage from its present site and to refrain from placing it elsewhere on any of the four lots. Defendant shall comply with removal of said building from Lot No. 3 within 30 days from the day of this decision.
MALERBA V WARREN AND LILCO
The crux of this action is a pole numbered 15-B owned by one of the defendants, Mary Kim Warren. Said pole, plaintiffs allege, rests there pursuant to a written agreement between the Warrens and LILCo. This pole is a utility pole over which the wire is to serve the Malerba residence with electricity. It is alleged that some time in the latter part of 1979 defendants notified LILCo that they wanted LILCo to remove said pole and that if LILCo did not remove it they would. The issue here is whether or not there was an understanding between the Malerbas and the Warrens as to the source of the electricity and whether or not the agreement with LILCo was one running to LILCo for as long as there was a necessity to supply electricity in the area.
Plaintiffs seek to restrain defendants from in any way interfering with the pole, removing it from their premises, and that he continue to allow LILCo to run electricity over his property and over to the Malerba property or, in the alternative, that if he wants it moved he pay the cost for same and in a manner that is acceptable to plaintiffs. The theory of this action involves the subject of implied easements. Where the owner of a parcel of land conveys part of it retaining the other part of it appears that at the time of the conveyance the part rented has been subjected to some use or burden for the benefit of the part conveyed in a way which is open, notorious, permanent and of value to the part conveyed, an easement arises by implied grant giving to the grantees of the part so conveyed the right to have the *798 use or burden continue as theretofore for the benefit of his property. The question on which each case turns is this: Would the purchaser as an average, reasonable man have the right to believe that he was acquiring with the property conveyed to him an easement in the property rented by the grantor ahd would the amount paid by him for the property include such easement because of the apparent physical situation of the two parcels with reference to one another at the time of the sale? (Walsh, Law of Property, § 289, p 605.) If he had the right to believe that he was purchasing and paying for the easement not because of the easement in question because of the physical situation of the two parcels then existing, the law will give effect to the easement as an implied term of the deed exactly as thereof it had been created therein by express terms. The inadvertent failure to expressly provide for it will not prevent it from arising, the sale having been made with the tacit understanding that the easement should arise.
The elements of the rule in New York as to the establishment of implied easements were specifically set forth in Jacobson v Luzon Lbr. Co. (192 Misc 183, affd 276 App Div 787, affd 300 NY 697). These elements are: (1) the estates presently resting in the hands of different owners must formally have been in unitary ownership; (2) while so formally held in one estate, a use must have been created by the owner either in which one part of the land was made subservient to another, or such a use made of the two parts as to create a reciprocal subordination; (3) the use must be plainly and physically apparent on reasonable inspection; and (4) it must effect the value of the estate benefited and must be necessary to the reasonable use of such estate.
Defendants raise questions of fact as to unity of interest in ownership of the four parcels. His argument is that the agreement dated April 10, 1974, executed by defendant Harry Warren was not binding upon him or his daughter as an easement because it was not properly1 recorded pursuant to section 290 of the Real Property Law, and not attested to pursuant to section 243 of the Real Property Law. This argument must fail since there is abundant authority that a grant of an easement by an instrument which is unacknowledged and unattested may neverthe *799 less support equitable rights and interest in property which, when established by possession and improvements, are effective against a subsequent purchase of a servient estate who takes with actual knowledge of the possession and improvements (Historic Estates v United Paper Bd. Co., 285 NY 658; City of New York v New York & South Brooklyn Ferry & Steam Transp. Co., 231 NY 18; Antonopulos v Postal Tel. Cable Co., 261 App Div 564, affd 287 NY 712; see, also, Turner v May, 202 Misc 320).
Defendants further contend that no deeds or other documents other than the oral testimony of defendant, Harry Warren, were adduced at trial. With respect to that contention, the court does not agree. It may take judicial notice of the record and proceedings of the action under Index No. 78-13608 (Kane v Walsh, 295 NY 198; Matter of Bach, 81 Misc 2d 479, affd 53 AD2d 612).
The court also takes note of the fact that by the deed dated April 16, 1973, pursuant to which defendants Harry Warren and Jean D. Warren conveyed Lot No. 3 to Mary Kim Warren, defendants reserved to themselves the full use of the premises (Lot No. 3) for whatever purposes they may deem fit, said reservation to continue until April 16, 1973. Accordingly, any implication that Mary Kim Warren was not in privy with LILCo must fail.
Accordingly, the court holds that plaintiffs are entitled to the injunctive relief they seek. If defendants wish to move said pole, they must bear the cost for same. Also, they must do so in such a manner as to not destroy the aesthetic quality of plaintiffs’ property and, furthermore, in such a manner so as not to give rise to a physically harmful condition on plaintiffs’ property.
The court would be remiss if it did not commend attorneys Ludwig J. Abruzzo, Aaron Donner and Howard M. Finkelstein for the manner in which they comported themselves at trial and for their scholarly posttrial briefs which were a great aid to the court. I consider them to be among the finest of the New York State Bar.