OPINION OF THE COURT
Memorandum.
Ordered that, on the court’s own motion, the appeals are consolidated for purposes of disposition; and it is further ordered that the amended judgments of conviction are modified, on the law, by vacating the convictions of violating Code of the Village of Laurel Hollow § 23-3 (P), vacating the sentences imposed thereon, and dismissing the four counts of each accusatory instrument charging those offenses, and the fines imposed thereon, if paid, are remitted; as so modified, the amended judgments are affirmed.
*55 Defendant Claudia Dowling, Inc. was charged in an accusatory instrument with five counts of violating Code of the Village of Laurel Hollow § 145-5 (E) for operating a commercial venture without permission or approval in the residential district of the Village of Laurel Hollow, and with four counts of violating Code § 23-3 (P) for violating four Village “stop-work orders.” In a separate accusatory instrument, containing the same factual allegations, defendant Claudia Dowling, individually, was charged with the same nine counts of violating the Code.
At a joint nonjury trial, before the first witness testified, defense counsel orally moved to dismiss the accusatory instrument charging Claudia Dowling, individually, contending that there would be no evidence presented at trial demonstrating that she had any personal liability.
The facts adduced at trial were basically undisputed and establish that defendant Claudia Dowling, as president of defendant Claudia Dowling, Inc., had entered into a contract with Bobby Bakhchi, the owner of real property located within the Village’s residential district, to “present, produce and direct” a designer show house event at premises owned by him for the period beginning June 15, 2013 and ending October 31, 2013, wherein 24 different designers would decorate his premises at no cost to him. The expectation for the event was that members of the public would come to the home, view its decorated rooms, and hire the services of the various designers who had left their business cards in the particular room of the premises that they had designed. A fee was to be charged to each member of the public that would attend the event. The homeowner had applied for a permit to conduct the event on his property, which, he admitted, did not comply with existing village zoning restrictions. After Bobby Bakhchi’s application for a permit was denied, he appealed the denial to the Village’s Board of Zoning Appeals (BZA), seeking the grant of a use variance. Claudia Dowling testified about the proposed event before the BZA and was present for its determination. The BZA ultimately denied the variance as a nonpermitted use pursuant to Code § 145-5 (E). The BZA found that, if a variance were granted, it would alter an essential character of the neighborhood since it would introduce a commercial use to the neighborhood resulting in significant and substantial negative impacts, which included creating additional traffic on the one-lane road leading to the subject property, as Claudia Dowling *56 had testified that it was expected that the event would attract 20 to 30 people on weekend days and 5 to 20 people on weekdays. Subsequently, after seeing an advertisement in the newspaper pertaining to the event, the Village Clerk sent an email to Claudia Dowling at her business address, reminding her of the BZA’s determination and warning her that if she continued to proceed with the event, as planned, the Village would “take any and all steps necessary to prevent the event from proceeding.”
On August 31, 2013, a Village code enforcement officer came to the subject property, observed the designer show house event operating, issued an appearance ticket for a violation of Code § 145-5 (E), and served a “stop-work order.” On September 1, 2, 5 and 6, 2013, the officer returned to the premises, observed the continuing operation of the event, served additional “stop-work orders,” and issued appearance tickets on each of those dates for violating Code § 145-5 (E) and separate appearance tickets, pursuant to Code § 23-3 (P), for violating each of the “stop-work orders.” At trial, the Justice Court was asked by all parties to take judicial notice of orders from a Supreme Court, Nassau County, action, relating to the instant matter, which court had issued a temporary restraining order against defendants, among others, on September 6, 2013 and ultimately enjoined them from operating the designer show house event upon the subject premises.
At the conclusion of the trial in this action, in which the code enforcement officer and Claudia Dowling were the only witnesses to testify, defense counsel again orally moved to dismiss the accusatory instrument charging Claudia Dowling, individually, this time contending that the evidence presented at trial failed to demonstrate that she had any personal liability. In an order dated June 4, 2014, the Justice Court denied the motions, determining that an officer of a corporation is liable for her own intentional wrongdoing whether or not that wrongdoing occurred within the scope of employment and without regard to any benefit occurring to the officer. Defendants were then convicted as charged.
Code § 145-5 (E) sets forth the permitted uses of real property within the Village’s “Residence District.” Furthermore, Code § 145-33 (A) imposes liability for a zoning violation on “[a]ny owner, lessee, contractor, corporation, association, agent or other person who uses or maintains or causes to be used or maintained any building or premises or any part thereof in the *57 Village for any purpose other than the uses permitted therefor in” the zoning chapter of the Code. It should be noted that, although not binding on this court when reviewing this criminal matter, in issuing the injunction, the Supreme Court, Nassau County, concluded that the designer show house event was a nonpermitted commercial use of the premises in violation of Code § 145-5 (E). Moreover, the Supreme Court’s record demonstrates that defendants consented to the issuance of a permanent injunction in the Supreme Court action.
Defendants contend that the event qualifies as a use “customarily incidental and accessory to a single-family dwelling,” which is a permitted use pursuant to Code § 145-5 (E) (3), since the event was merely incidental to the sale of the house. However, the contract with the homeowner provided that the event would continue even if the property were sold during the six-week period in which it was scheduled to be held. Furthermore, similar to the testimony she had provided before the BZA, Dowling testified at the trial in the instant action that the purpose of the event was for the designers to be able to pursue further business opportunities and she admitted that patrons would be charged a fee for entry into the event. Indeed, the evidence demonstrates that the designers had placed their business cards in the home with the hope of attracting business. Thus, the evidence presented at trial demonstrated that the event was a nonpermitted commercial use of the premises.
With respect to Claudia Dowling’s contention that her motion to dismiss the accusatory instrument against her should have been granted since there was no basis upon which to prosecute her individually, we find that the accusatory instrument properly and sufficiently charged her with a zoning violation, in that it alleged that she had operated and promoted a commercial venture in a residential district (see generally CPL 100.40 [1]; People v Kalin, 12 NY3d 225, 228 [2009]).
With respect to Claudia Dowling’s contention that the evidence presented at trial failed to demonstrate that she had any personal liability, we note that, pursuant to Penal Law § 20.25, “[a] person is criminally liable for conduct constituting an offense which he [or she] performs or causes to be performed in the name of or in behalf of a corporation to the same extent as if such conduct were performed in his [or her] own name or behalf.” A corporate officer cannot escape individual criminal liability for violations of the law, even though the corporate entity may also be named as a defendant, as a corporation acts *58 only through the individuals who act on its behalf, including its officers (see People v Byrne, 77 NY2d 460 [1991]; People v Roth, 176 AD2d 1186 [1991] [finding that an individual can be held criminally liable for corporate conduct constituting a zoning violation]; People v Premier House, 174 Misc 2d 163 [Crim Ct, Kings County 1997]). Here, the trial evidence demonstrated that Claudia Dowling was the president of Claudia Dowling, Inc. and that she had used the subject premises for a nonpermitted purpose, pursuant to Code § 145-5 (E). Thus, pursuant to Penal Law § 20.25, Claudia Dowling was properly held to be criminally liable for her own acts regardless if they were performed as an officer of Claudia Dowling, Inc. (see generally People v Concert Connection, 211 AD2d 310 [1995]). Consequently, Claudia Dowling’s trial motion to dismiss was properly denied by the Justice Court.
Additionally, it was not an improvident exercise of discretion for the Justice Court to deny Claudia Dowling’s motion to dismiss the accusatory instrument against her in furtherance of justice, which was raised for the first time in a posttrial memorandum, as the record fails to demonstrate the existence of some compelling factor, consideration or circumstance clearly demonstrating that Claudia Dowling’s prosecution, and resulting conviction, constituted an injustice (see CPL 170.40 [1]; People v Candelaria, 50 AD3d 913 [2008]; People v Sherman, 35 AD3d 768 [2006]; People v Clayton, 41 AD2d 204 [1973]). For the foregoing reasons, we find no basis to disturb each defendant’s five convictions of violating Code § 145-5 (E).
With respect to defendants’ contentions pertaining to their convictions for violating Code § 23-3 (P), building codes, as is the case with other legislation, must be strictly construed against the municipality enacting them (see generally Matter of Allen v Adami, 39 NY2d 275 [1976]; Matter of Bonded Concrete v Zoning Bd. of Appeals of Town of Saugerties, 268 AD2d 771 [2000]; Malerba v Warren, 108 Misc 2d 785 [Sup Ct, Suffolk County 1981]). Stop-work orders are typically used for construction projects (see 3 Patricia E. Salkin, New York Zoning Law & Practice § 36:13 [2016]); however, here, the “stop-work orders” which were issued to defendants specifically referenced the Village’s Zoning Code (Code § 145-5 [E]) when ordering them to stop the designer show house event. They did not reference the Village’s Building Code whatsoever. Furthermore, at trial, the code enforcement officer testified that the purpose of the stop-work orders was to notify defendants that *59 they were not permitted to operate a designer show house event at the premises pursuant to the Zoning Code and based on the BZA’s decision that the event was not a permitted use. Yet, the Village’s Building Code specifies that stop-work orders pertain only to buildings or structures which are in the process of being constructed, altered, installed, repaired or removed (see Code § 23-1).
Moreover, Code § 23-3 (P) prohibits the performance of any “work” in violation of, or contrary to, the provisions of a stop-work order, which is to be issued only under two circumstances: (1) whenever the building inspector is satisfied that the execution of any work for which a permit is issued is contrary to the provisions of the Building Code and/or the permit for such work (see Code § 23-3 [P] [1]); or (2) whenever, in the opinion of the building inspector, the continuance of a building operation is contrary to the public welfare by reason of defective or illegal work in violation of a provision or requirement of the Building Code (see Code § 23-3 [P] [2]). As correctly contended by defendants, there was no work, as contemplated by the Building Code, taking place at the time that the stop-work orders were issued, since the subject premises were not in the process of being constructed, altered, repaired or removed at the time the designer show house event was in progress. Rather, the record demonstrates that any work which had to be performed to set up the event, even if such work might be deemed to have come within the Building Code requirement initially, had already been completed by the time the stop-work orders were issued. Thus, despite the Village’s contention to the contrary, the event cannot be considered a building operation in progress that was contrary to the public welfare by reason of defective or illegal work in violation of Code § 23-3 (P) (2). Therefore, the event could not be regulated under the Village’s Building Code.*
As a building code is penal in nature and must be construed in a manner so as not to embrace situations which clearly do not fall within its terms (see generally People v Nolan, 78 Misc 2d 607 [App Term, 2d Dept, 9th & 10th Jud Dists 1973]), the notices provided to stop the event cannot be considered stop-work orders as defined in Code § 23-3 (P) and, as a result, defendants cannot be found to have violated this provision of the Village Code. Therefore, when viewing the evidence at trial in *60 the light most favorable to the prosecution (see People v Contes, 60 NY2d 620 [1983]), we find that there was no valid line of reasoning and permissible inferences from which a rational trier of fact could have determined defendants’ guilt of this offense (see People v Danielson, 9 NY3d 342, 349 [2007]).
Accordingly, the amended judgments of conviction are modified, by vacating the convictions of violating Code of the Village of Laurel Hollow § 23-3 (P), vacating the sentences imposed thereon, and dismissing the four counts of each accusatory instrument charging those offenses, and the fines imposed thereon, if paid, are remitted.
Marano, P.J., Tolbert and Garguilo, JJ., concur.

 In fact, when the Village wanted to ensure that the event would not continue as planned, it sought an injunction in the Supreme Court.