John J. Miller, Appellant, v. Robert Morse, Respondent.
Freida Miller, Appellant, v. Robert Morse, Respondent.

Fourth Department, November 13, 1959.

*Louis S. Cifarelli* and *Frank G. Pratt* for appellants.

*Carl J. Cochi* and *Frank J. Ryan* for respondent.

HALPERN, J. This case was tried in an unusual manner, apparently in an effort to reach the underlying question of law as expeditiously as possible. After a jury had been impanelled, the parties stipulated some of the facts and the plaintiffs made an offer of additional proof and the parties submitted the case to the court for its decision " on matters of law ". The court then decided that on the stipulated facts and on the assumption that the offer of proof " represented the facts ", the plaintiffs had failed to make out a case and accordingly dismissed the complaints. The dismissal, in some respects, resembled a dismissal on the opening by plaintiffs' counsel (*Hoffman House* v. *Foote,* 172 N. Y. 348). But, in view of the fact that the case was put to the court not merely in the form of a statement by counsel but in the form of a stipulation of the conceded facts and an offer to prove additional facts, which the defendant was willing to have the court consider as true for the purpose of the motion, the court's action may more accurately be regarded as the equivalent of a dismissal as a matter of law at the close of the plaintiffs' case (Civ. Prac. Act, § 482; cf. *Kazansky* v. *Bergman,* 4 A D 2d 79). In either event, the dismissal cannot be allowed to stand unless it is found that, after giving the plaintiffs the benefit of all favorable inferences, the plaintiffs had still failed to make out a case warranting submission to the jury (*Osipoff* v. *City of New York,* 286 N. Y. 422, 425; *De Wald* v. *Seidenberg,* 297 N. Y. 335; *Sagorsky* v. *Malyon,* 307 N. Y. 584).

The facts were stipulated by the parties as follows: In the fall of 1951, the plaintiffs had become month-to-month tenants of the defendant in an apartment on the second floor of a two-family house owned by the defendant. There was a difference of about 1½ to 2 inches between the level of the kitchen floor and the level of the bedroom floor in the apartment. On November 8, 1953, the plaintiff wife tripped and fell over this

obstruction, at the doorway between the kitchen and the bedroom. The parties also stipulated that the defendant had upon numerous occasions made repairs in the demised premises during the plaintiffs' tenancy, with the acquiescence of the plaintiffs, but the exact nature of the repairs was not stated. This was all that was stipulated. However, the plaintiffs offered to prove the following additional facts: (1) After the plaintiffs had been in possession of the premises for about one year, the plaintiffs had requested the defendant "to remove the difference in elevation" between the kitchen and bedroom floors and the defendant had agreed "to make such a structural change" and on several occasions had repeated the promise to make "the agreed structural alteration" but "had not done so prior to the accident". (2) The defendant lived downstairs in an apartment at the rear of a store operated by the defendant and the defendant had permission to enter the plaintiffs' apartment and had access to the apartment at all times during their absence. "[T]he back stairway from the plaintiffs' apartment led directly to the kitchen of the defendant" and the door was "habitually left unlocked". (3) The defendant "had actually installed kitchen cabinets while they [the plaintiffs] were away and had made other repairs with their acquiescence, unrelated to the condition in question". Some of the materials for these repairs were purchased by the plaintiff husband and "for some part of this he was reimbursed by way of a rent credit".

The court held that, upon the assumption that the plaintiffs would be able to prove all of the facts which they had offered to prove, in addition to the stipulated facts, the plaintiffs had failed to make out a prima facie case warranting submission of the case to the jury. The court held that there was no liability in tort on the part of the landlord for his failure to carry out his promise to remedy the structural defect. Accordingly, it dismissed the complaints.

The law with respect to the liability of a landlord for failure to make repairs in accordance with a promise to do so has undergone a considerable change in this State during the past 30 years. In *Cullings* v. *Goetz* (256 N. Y. 287) decided in 1931, the Court of Appeals declared it to be the law of New York, despite the contrary view entertained in what was then a minority of other States, that "a covenant to repair does not impose upon the lessor a liability in tort at the suit of the lessee or of others lawfully on the land in the right of the lessee". "Liability in tort" the court declared "is an incident to occupation or control" (p. 290) and it held that the agreement to make repairs was not sufficient of itself to establish the requisite

control. The court quoted from a leading English case, *Cavalier v. Pope* ([1906] A. C. 428, 433) the statement that the power of control "implies the power and the right to admit people to the premises and to exclude people from them". Obviously, a landlord did not, by a mere covenant to repair, reserve a power of control of that character.

However, in the 1940's the Court of Appeals decided a trilogy of cases in which a different view was taken as to the nature of the requisite control. The court held that proof that the landlord had promised to make repairs and had reserved the right to enter the premises for that purpose, coupled with proof that he had actually entered and made repairs during the tenancy, was enough to create a question of fact as to whether the landlord had retained control sufficient to give rise to tort liability (*Scudero v. Campbell*, 288 N. Y. 328 [1942]; *Antonsen v. Bay Ridge Sav. Bank*, 292 N. Y. 143 [1944]; *Noble v. Marx*, 298 N. Y. 106 [1948]).

The *Scudero* case involved a one-family house; the *Antonsen* and *Noble* cases involved two-family houses. The relevant facts in all three cases were very similar to the facts in this case. It is true that in the cases cited there was proof that the landlord had made repairs after the occurrence of the accident but the making of repairs by the landlord at any time during the tenancy must be given the same effect, so far as showing the reservation of control is concerned. In fact, repairs made prior to the accident bear more directly upon the question of whether the landlord was in control of the premises at the time of the occurrence of the accident than repairs made thereafter (cf. *Mulligan v. New York Univ.*, 254 App. Div. 107).

The *Scudero* and *Antonsen* cases were followed in several cases in the Appellate Division of the Second Department (*Rosenberg v. Kings County Sav. Bank*, 270 App. Div. 904; *Citron v. Kapner*, 271 App. Div. 932; *Reische v. Montgomery*, 273 App. Div. 824). The Third Department followed the *Antonsen* case in *Relihan v. Felson* (268 App. Div. 76, appeal dismissed 294 N. Y. 980).

The *Antonsen* case was also followed by the Appellate Division of the Third Department in *Noble v. Marx* (272 App. Div. 670). Justice [now Presiding Justice] FOSTER commented that he found it difficult to reconcile the *Antonsen* case with the *Cullings* case "but the *Antonsen* case is the most recent expression on the subject by the Court of Appeals" and he therefore felt bound to follow it (p. 673). The decision of the Appellate Division in favor of the plaintiff in *Noble v. Marx* was affirmed by the Court of Appeals unanimously in 298 N. Y. 106.

See, also, the decision of the Appellate Division of the Third Department in *Hawk* v. *State of New York* (283 App. Div. 225, 227, affd. 307 N. Y. 788).

Subsequently, the Appellate Division of the Second Department, in a 3 to 2 decision, declined to apply the doctrine of the *Scudero, Antonsen* and *Noble* cases to a different set of facts, in *De Clara* v. *Barber S. S. Lines,* and dismissed the complaint (285 App. Div. 1062) but the Court of Appeals reversed and upheld the plaintiff's right of recovery (309 N. Y. 620 [1956]).

In his opinion in the *De Clara* case, Judge FULD elucidated the holding of the *Scudero, Antonsen* and *Noble* cases and their impact upon the *Cullings* case. Judge FULD said (p. 629): '' While these cases [the three cases mentioned] do not relax the requirement of requisite control in the landlord, they do indicate that such control may be demonstrated by a showing of something less than ' the power and the right to admit people to the premises and to exclude people from them ' ''. As Judge FULD's analysis demonstrated, the English definition of control quoted in the *Cullings* case had impliedly been rejected by the holding of the cited cases (see, also, Ann. 163 A. L. R. 300, 305–306). Judge FULD further pointed out that, even in the *Cullings* case, the court had recognized that the power to admit and exclude was not necessarily the sole test of the control requisite for tort liability and that '' a landlord may retain the essential control of leased property by reserving to himself the right, to be exercised in his independent discretion   *   *   *   to enter the premises at any and all times and make repairs upon his own responsibility '' (pp. 628–629). Judge FULD did not attempt to distill from the intervening cases a new comprehensive definition of the requisite control but he held that '' A landlord who has the right to come and go upon the leased premises as he pleases for the purpose of inspection and repair and who is at liberty to correct any defect as soon as it is found, must be regarded as having thereby reserved a privilege of ownership, sufficient to give rise to liability in tort '' (p. 630).

See comments on the New York cases in the leading texts and in the law reviews: 2 Harper & James, Law of Torts, § 27.16, pp. 1514–1515; Prosser on Torts (2d ed.), pp. 474–475; 48 Mich. L. Rev. 689; 49 id. 1080; 1 Syracuse L. Rev. 80; 8 id. 50; 23 Brooklyn L. Rev. 142.

Examining the case before us in the light of the cases cited, we find that the proof which the plaintiffs offered to make was enough to create a question of fact as to whether the defendant had reserved a measure of control sufficient to give rise to liability in tort.

It is true that the making of the promise to remedy the defect was not of itself sufficient; this much of the *Cullings* case has survived the later cases. However, the promise of repair was coupled in this case with the making of actual repairs and with complete freedom of access on the part of the landlord. Upon a full development of the facts, a jury could find that the landlord had in effect treated the premises as remaining under his control for the purpose of making such repairs as he wished to make, upon his own responsibility. This would be sufficient to distinguish this case from the *Cullings* case and to bring it within the principle of the *De Clara* case. The dismissal of the complaint was therefore improper.

In addition to the cause of action for negligence, which we have held to be sufficient, the complaint contains two other causes of action which require brief comment.

The contract cause of action was properly dismissed. No recovery can be had in a case of this type for personal injuries on a contract theory. Where a promise by a landlord to make repairs is not performed, the damages for breach of contract are ordinarily limited to the cost of making the repairs (*Cullings* v. *Goetz*, 256 N. Y. 287, *supra*; *Potter* v. *New York, Ontario & Western Ry.*, 233 App. Div. 578, 583, affd. 261 N. Y. 489).

A cause of action is also pleaded in nuisance but, accurately used, the term "nuisance" is applicable only to conditions or activities which threaten injury to persons outside the defendant's premises, either upon a public highway or upon the premises of others in the neighborhood (e.g., *Appel* v. *Muller*, 262 N. Y. 278, 282; Restatement, Torts, § 822 and the preceding "Scope and Introductory Note"). The term "nuisance" was used in some of the early cases (e.g., *Swords* v. *Edgar*, 59 N. Y. 28, 34) with reference to a dangerous condition upon premises which were let by the lessor for a purpose which involved "the admission of a large number of persons as patrons of his lessee" but the later and better view is that the cause of action is one for negligence, the duty of care arising from the lessor's knowledge of the contemplated use (Restatement, Torts, § 359; *Junkermann* v. *Tilyou Realty Co.*, 213 N. Y. 404; *Campbell* v. *Elsie Holding Co.*, 251 N. Y. 446). In any event, the term "nuisance" may not properly be used with respect to a defect in the interior of a flat in a two-family house, not intended for public use. As applied to such a situation, the word "nuisance" is a "misnomer" (*Antonsen* v. *Bay Ridge Sav. Bank*, 292 N. Y. 143, 147, *supra*). It can only serve as an epithet and an epithet does not make out a cause of action. "It is wholly alien to the

underlying conception of the theory of nuisance and its development in the common law, to refer to a condition or activity which can only be injurious to a person who goes upon the land on which it exists, as a nuisance '' (Eldredge, Modern Tort Problems, p. 124). The nuisance cause of action was therefore properly dismissed.

The judgments appealed from should be reversed on the law and a new trial granted.

All concur, BASTOW and GOLDMAN, JJ., in result. Present— McCURN, P. J., KIMBALL, BASTOW, GOLDMAN and HALPERN, JJ.

Judgments reversed on the law and a new trial granted, with costs to the appellant to abide the event.