**55 MOTOR AVENUE COMPANY; Cubbies Properties, Inc., and J. Jay Tanenbaum, Plaintiffs,**

**v.**

**LIBERTY INDUSTRIAL FINISHING CORP.; Liberty Aero, Inc.; Liberty Associates, a New York General Partnership; Liberty Associates, a New Jersey Partnership; United States of America; Coltec Industries, Inc.; and Venada Corporation, Defendants.**

No. CV 91–0968 (CBA).

United States District Court, E.D. New York.

Dec. 29, 1994.

Daniel Riesel, Sive, Paget & Riesel, New York City, for Coltec Industries, Inc.

Stanley N. Alpert, U.S. Attorney's Office, Brooklyn, NY, for U.S.

Ivan K. Fong, Covington & Burling, Washington, DC, for Grumman Corp.

Deborah Goldberg, Arnold & Porter, New York City, for 55 Motor Ave.

John A. Harras, Morton Weber and Associates, Melville, NY, for Liberty Aero, Inc.

Michael S. Etkin, Gold & Wachtel, New York City, for Liberty Associates.

Laura Kozma, Cohen, Shapiro, Polisher, Shiekman and Cohen, Lawrenceville, NJ, for Koch Engineering Co., Inc.

Donald H. Chase, Morrison Cohen, Singer & Weinstein, New York City, for Beazer East, Inc.

Martin Scher, Carle Place, NY, for Liberty Ind. Finishing.

### MEMORANDUM AND ORDER

AMON, District Judge.

### INTRODUCTION

Plaintiffs bring this action against the defendants for alleged hazardous waste contamination of plaintiffs' property in Nassau County, New York. The Complaint contains claims pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, as well as state law claims. Defendants Liberty Industrial Finishing Corp. ("Liberty Industrial") and the government separately move to dismiss the state law claims, Causes of Action Four through Nine. Defendant Liberty Industrial also moves to dismiss cross-claims for contribution and indemnity brought by defendants Liberty Aero, Inc. ("Liberty Aero") and Liberty Associates.

For the reasons set forth below, the government's motion to dismiss on jurisdictional grounds is denied in part and granted in part. Defendant Liberty Industrial's motion to dismiss for lack of jurisdiction is denied. Liberty Industrial's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is granted as to Causes of Action Four, Five, Six and Seven and denied as to Causes of Action Eight and Nine. Defendant Liberty Industrial's motion to dismiss the cross-claims brought by defendants Liberty Aero and Liberty Associates is denied.

### ALLEGATIONS OF THE COMPLAINT

Plaintiff 55 Motor Avenue Company (55 Motor) is a New York partnership which is the operator of two parcels of land (Lots 326 and 327) in Farmingdale, New York known as Liberty Industrial Finishing Site (Site). Plaintiff Cubbies Properties Inc. (Cubbies), a New York Corporation, and individual plaintiff J. Jay Tanenbaum are the current owners of both the Site and 55 Motor. Plaintiffs Cubbies and Tanenbaum acquired their interest in the Site in December of 1986. The property was formerly owned by Four J's Co. One of the partners in the now dissolved Four J's Co. is the sole shareholder of Cubbies.

The complaint names the United States of America based upon the actions of two government owned corporations, the Reconstruction Finance Corporation (RFC) and the Defense Plant Corporation (DPC). DPC owned and operated the Site from 1941 until 1945. DPC was dissolved in 1945 and its functions, assets and liabilities were transferred to RFC which in turn operated the Site from 1945 until 1948. Together with a

private company, DPC and RFC manufactured precision aircraft parts on the Site. During the course of the manufacturing process, hazardous metals were disposed on the land. The complaint alleges that DPC and RFC were asked by the Nassau County Department of Health to present and to implement plans for waste treatment. According to the allegations of the Complaint, these requests were ignored.

The Site was privately purchased in 1948, and the DPC and RFC were subsequently dissolved.

Between 1948 and 1978, a series of private corporations used the Site for the manufacture of aircraft machine parts and electroplating facilities. Throughout this period, inadequately treated or wholly untreated metal plating wastes were disposed of on the Site, causing contamination by cadmium, chromium, copper and other hazardous substances.

From 1966 to 1978, defendant Liberty Industrial conducted operations on the Site. Liberty Industrial "generated, treated and disposed of hazardous substances at the Site". (Complaint at 11). In 1975, Liberty Industrial was issued a State Pollutant Discharge Elimination System ("SPDES") permit by the New York State Department of Environmental Conservation which set maximum discharge levels of specified pollutants. In 1977, tests of water collected from Liberty Industrial's basins revealed that Liberty Industrial had violated its permit with respect to the discharge of chromium, cadmium and copper. Pursuant to a consent order, Liberty Industrial agreed to clean up the Site by October 1, 1978. Liberty Industrial failed to clean up the Site, abandoned the property and moved its operations to its current location.

In December 1980, without notice of any hazardous waste contamination, Four J's purchased Lot 326 and leased Lot 327 with an option to purchase. Four J's exercised the option to purchase Lot 327 in 1984.

Neither Four J's nor 55 Motor released hazardous chemicals onto the property nor did they lease the property to anyone who did so.

In 1984, Four J's retained an engineering firm to investigate the status of the soil and ground water contamination attributed to the operations. The study performed by the firm revealed concentrations of hazardous chemicals at levels in excess of EPA and New York State standards. In March of 1987, 55 Motor Avenue entered into a consent order providing for the clean up of the Site in compliance with a Department of Environmental Conservation approved Site Operation Plan.

## DISCUSSION

### A. Government Motions

In its moving papers, the Government seeks dismissal of Claims Four (intentional private nuisance), Five (negligent private nuisance); Seven (trespass) and Nine (equitable indemnity) for failure to comply with the jurisdictional requirements of the Federal Tort Claims Act (28 U.S.C. § 1346). As to Claims Six (the strict liability claim) and Eight (the demand for restitution), the Government contends that there has been no waiver of sovereign immunity and no basis for the assertion of federal jurisdiction over these claims.

In the complaint, plaintiffs rely on the Federal Tort Claims Act (28 U.S.C. § 1346), the Federal question statute (28 U.S.C. § 1331) and the doctrines of pendent and ancillary jurisdiction as the basis for jurisdiction against the United States for the actions of DPC and RFC. (Complaint at ¶ 2). In their papers, they assert as an additional jurisdictional predicate, the provisions of the Reconstruction Finance Corporation Act and its Amendments which clothed the RFC and later the DPC with corporate powers including the authority to "sue and be sued, to complain and to defend in any court of competent jurisdiction, State or Federal." Reconstruction Finance Corporation Act, § 4, 47 Stat. 5, 6 (1932) (repealed 1966).

For the reasons that follow, the Court concludes that the United States has waived sovereign immunity and that there is a basis for the assertion of federal jurisdiction over all of the state law tort and implied contract claims with the exception of the Sixth Claim, the cause of action for strict liability.

The Supreme Court has held that a "sue and be sued" clause similar to the one set forth in the Reconstruction Finance Corporation Act provides both a waiver of sovereign immunity and a grant of federal jurisdiction over causes of action against the entity. *American Nat'l Red Cross v. S.G. and A.E.*, 505 U.S. 247, 249, 112 S.Ct. 2465, 2468, 120 L.Ed.2d 201 (1992).

The inquiry does not end here, however, since the jurisdiction conferred by this provision is subject to the exclusive terms of the Federal Tort Claims Act.

In 28 U.S.C. § 2679, Congress provided: (a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

■ Accordingly, in asserting tort claims, a plaintiff is required to comply with the requirements of the Federal Tort Claims Act even where an agency is authorized to sue and be sued in its own name. See *Ascot Dinner Theatre, Ltd. v. Small Business Administration*, 887 F.2d 1024, 1028 (10th Cir. 1989).

### 1. Compliance with the Federal Tort Claims Act

Here, the government argues that this Court lacks jurisdiction under the Federal Tort Claims Act (FTCA) because plaintiffs have failed to comply with the filing requirements of 28 U.S.C. § 2675.

Four of the nine causes of action asserted by plaintiff are based on state tort law and are brought against the government pursuant to the FTCA.[1] The FTCA provides a limited waiver of sovereign immunity for parties seeking tort damages against the United States. Section 1346 provides that district courts:

shall have exclusive jurisdiction of civil actions on claims against the United States,

for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government ...

28 U.S.C. § 1346. The Act also provides that

[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied in writing. [ ] The failure of an agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant ... be deemed a final denial of the claim ...

28 U.S.C. § 2675(a).

Section 2675 was designed to provide a procedure to enable the government to investigate and consider settlement of tort claims. *Johnson v. United States*, 788 F.2d 845, 848 (2d Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986). The notice of claim provided for by § 2675 is intended to supply sufficient information to permit an investigation by the appropriate federal agency and to estimate the claim's worth. *Id.* (citations omitted). The administrative claim need not satisfy formal pleading requirements. *Id.* Thus, all that is required is that the claim be "specific enough to serve the purposes intended by Congress in enacting § 2675(a), i.e., 'to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States.'" *Id.* at 848–49 (quoting S.Rep. No. 1327, 89th Cong., 2d Sess. 2 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2515, 2516). The regulations promulgated in conjunction with § 2675 provide that a claim shall be deemed presented when a

[f]ederal agency receives from a claimant [or] his duly authorized agent ... written notification ... accompanied by a claim for

---

1. The causes of action are for intentional private nuisance, negligent private nuisance, strict liability and trespass. The government includes the claim for equitable indemnity as a tort, however,

it is more appropriately deemed a contract implied by law. *Trustees of Columbia Univ. v. Mitchell/Giurgola Assoc.*, 109 A.D.2d 449, 492 N.Y.S.2d 371, 374 (1985).

money damages in a sum certain for injury to or loss of property ... and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator ... or other representative.

28 C.F.R. § 14.2.

The government claims that plaintiffs have failed to comply with the claim procedures set forth in § 2675. Plaintiffs contend that a letter dated February 25, 1991 ("Letter"), from their attorneys to the Department of Justice satisfies the filing requirement. The Letter sets forth plaintiffs' intention to bring a CERCLA claim and includes a copy of the complaint that was ultimately filed in this action. *See* Gerrard Aff. Exh. B.

■ As a threshold matter, the government argues that plaintiffs failed to allege properly in their complaint that they complied with the filing requirements of § 2675. The Complaint does not make any allegation about the Letter of February 25, 1991, and nowhere states that the notice of claim requirements of § 2675 have been satisfied. Because the notice of claim requirements are jurisdictional in nature, allegations of presentment of a claim are necessary. *Healy v. United States Postal Service*, 677 F.Supp. 1284 (E.D.N.Y.1987) (tort claim dismissed without prejudice where plaintiff failed to allege presentation of claim to agency); *see also Altman v. Connally*, 456 F.2d 1114 (2d Cir.1972) (complaint found deficient for failure to allege presentment to federal agency).

In the instant case, the complaint is deficient in that it fails to allege compliance with § 2675. However, this deficiency is easily cured by amending the complaint. Therefore, this Court will proceed to address the government's contention that the letter and the complaint do not satisfy the requirements of § 2675.

■ First, the government argues that the Letter is merely a threat to sue in two weeks and not a notice of claim. The government notes, correctly, that § 2675 provides that "an action shall not be instituted" until the government has denied the claim or failed to respond for six months. 28 U.S.C. § 2675.

The Letter contains information about the history of the ownership of the Site and states that plaintiffs are providing information, as requested by the government, to assist in evaluating government liability under CERCLA. The Letter also states plaintiffs' intention to file suit in two weeks. The government fails to cite any support for its contention that because the letter notes that an action pursuant to CERCLA will be commenced within two weeks that the attached complaint which sets forth the various tort claims fails to constitute proper notice. The regulations provide that a claim may be presented by "an executed Standard Form 95 *or other written notification of an incident.*" 28 C.F.R. § 14.2 (emphasis added). Neither the regulations nor the statute specifies that the notification must be presented in some specific format or that a threat to sue nullifies an otherwise proper notice of claim.

■ A problem is presented, however, by the fact that plaintiffs filed the instant action prior to the expiration of the six months provided for in § 2675 and "[e]xhaustion of administrative remedies is a jurisdictional prerequisite to maintaining a suit under the FTCA." *Kramer v. Secretary, United States Department of the Army*, 623 F.Supp. 505, 510 (E.D.N.Y.1985). Plaintiffs sent notice of their claim to the government on February 25, 1991, and filed their complaint on March 19, 1991. Under the provisions of § 2675, the action should not have been brought until August 1991. However, because August 1991 has long since past, it would be the ultimate exercise of form over substance to require plaintiffs to refile their tort claims. *Socialist Workers Party v. Attorney General of the United States*, 642 F.Supp. 1357 (S.D.N.Y.1986) (idle formality to require amendment of complaint where complaint filed prior to expiration of six month waiting period alleged the identical claim); *see also, Kramer*, 623 F.Supp. at 510 (dictum) (court could consider exhaustion issue moot where notice of claim was filed and administrative remedies were exhausted after lawsuit was filed); *Kubrick v. United States*, 581 F.2d 1092, 1098 (3d Cir.1978) (administrative claim denied before any substantial progress made in litigation does not require suit to be refiled

which would involve duplicitous pleadings), *rev'd on other grounds,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Clark v. United States,* 481 F.Supp. 1086, 1099 (S.D.N.Y.1979) (where filing requirements were complied with by the time oral argument on motion to dismiss was heard, government stipulated that complaint was to be regarded as filed six months from filing of administrative claims), *appeal dismissed,* 624 F.2d 3 (2d Cir.1980).

◼ Second, the government argues that the Letter is deficient because it fails to present evidence of "authority to present a claim on behalf of the claimant as agent ... or other representative" as required by 28 C.F.R. § 14.2. The government cites *Martinez v. United States,* 743 F.Supp. 298 (D.N.J.1990), in support of its argument. In *Martinez,* the court found that plaintiffs' attorney had submitted a sufficient Standard Form 95, but had failed to provide authorization for the attorney's representation of the plaintiffs as required by § 14.2 of 28 C.F.R. The court held that the failure to comply with this provision deprived it of jurisdiction. The government fails, however, to note that a different New Jersey District court when confronted with a similar case reached a different result and specifically rejected the reasoning in *Martinez.* In *Leaty v. United States,* 748 F.Supp. 268 (D.N.J.1990), the court held that a "letter of representation containing an offer to negotiate and settle the claim, sent by plaintiff's attorney" satisfies the requirements of 28 U.S.C. § 2675 and 28 C.F.R. § 14.2(a).[2] *Leaty,* 748 F.Supp. at 273. This Court concludes that a letter from plaintiffs' attorney stating that he represents plaintiffs and attaching a complaint that was to be filed on behalf of the plaintiffs is sufficient evidence of authorization to represent the plaintiffs.

◼ The government's third argument is that the Letter is not a proper claim because it does not contain a request for a "sum certain." The complaint attached to the Letter requests judgment against each defendant for

> either response costs pursuant to CERC-LA or otherwise, their costs of site investigation, removal, and remediation of approximately $609,100 *plus such response costs as 55 Motor may be required to bear in the future* ... $20,000,000 for the diminished value of the property ... $3,000,000 for the lost use and enjoyment of Liberty Industrial Finishing Site.

*See* Gerrard Aff.Exh. B at 34 (emphasis added). The government argues that the Complaint fails to state a claim for a sum certain in that the request for undetermined future response costs is not sufficiently certain. The statement of damages in any Notice of Claim *must* contain a sum certain. *Keene Corp.,* 700 F.2d at 841–42. In *Keene,* the court held that "a claim which includes 'an additional amount yet to be determined,'" which may be more than the enumerated claim is a claim which fails to satisfy the statutory purpose of § 2675. *Keene,* 700 F.2d at 842. The court reasoned that government officials cannot properly evaluate such a claim with a view towards settlement which is the purpose of the statute. *Id.* Similarly, in *Adams v. United States Dept. of Housing and Urban Dev.,* 807 F.2d 318, 321 (2d Cir.1986), an administrative claim requested an amount "in excess of $1,000." The court held that the amount was not specific enough to justify an action for $4,000,000, but permitted the plaintiff to go forward on a claim limited to $1,000. *Id.*

◼ In the instant case, the language "plus such response costs as 55 Motor Avenue may be required to bear in the future" is not sufficiently definite to permit collection of a judgment in excess of $609,100; however, the Complaint does not fail as a notice of claim merely because of this language.

---

2. The *Martinez* court determined that compliance with the regulations was a jurisdictional prerequisite. The court in *Leaty* specifically disagreed with the *Martinez* court and found that the regulations are not jurisdictional with respect to § 2675. The Second Circuit has not addressed whether the regulations constitute jurisdictional prerequisites. *Keene Corp. v. United States,* 700

F.2d 836, 841 n. 9 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). The court in *Keene* noted that "district judges in this circuit have applied the Section 2672 regulations to Section 2675." *Id.* (citations omitted). *But see, Byrne v. United States,* 804 F.Supp. 577 (S.D.N.Y.1992) (regulations in 28 C.F.R. § 14 do not apply to notice requirement of § 2675).

**418**

*Adams,* 807 F.2d at 321. Thus, with respect to plaintiffs' tort claims against the government, the relief requested in ¶ B on page 34 of the Complaint is limited for response costs to $609,100.[3]

■ Finally, the government contends that plaintiffs tort claims must be dismissed because they filed their notice of claim with the wrong federal agency, i.e., the Department of Justice instead of the General Services Administration. This argument is unavailing considering that 28 C.F.R. § 14.2 provides that where a claim is presented to an agency other than the agency whose activities gave rise to the claim, "that agency shall transfer [the claim] forthwith to the appropriate agency...." 28 C.F.R. § 14.2(b)(1).

In sum, the complaint which was attached to the Letter of February 1991, satisfies the notice requirements set forth in 28 U.S.C. § 2675 and 28 C.F.R. § 14.2.

### 2. Strict Liability

The government also moves to dismiss for lack of jurisdiction plaintiffs' Sixth Cause of Action for strict liability.

■ The Supreme Court has held that the FTCA's waiver of sovereign immunity does not extend to claims based on liability without fault. *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Berghoff v. United States,* 737 F.Supp. 199 (S.D.N.Y.1989). Thus, the United States, under the FTCA, may only be held liable for negligent or wrongful acts or omissions of its employees. *Berghoff,* 737 F.Supp. at 203.

■ Plaintiffs argue that if the claim for strict liability is not actionable under the FTCA then the sue and be sued clause of the Reconstruction Finance Corporation Act provides an independent waiver of sovereign immunity and jurisdictional predicate to pro-

ceed against the United States on this cause of action. This argument fails. In *Peak v. Small Business Admin.,* 660 F.2d 375, 377–78 (8th Cir.1981), the Eighth Circuit rejected a similar contention. There, plaintiffs relied upon "a sue and be sued clause" to bring a strict liability claim against the Small Business Administration. The Court in *Peak* concluded that the FTCA governed such a claim and hence its exclusive provisions applied but that under the Act, the claim was barred. The Court concluded the sue and be sued clause could not be employed to circumvent the exclusive remedy of the FTCA. In so ruling, the Court relied upon two earlier cases which held in an analogous context that causes of action specifically exempted from the provisions of the FTCA under Sections 1346 and 2680 could not be brought pursuant to Section 634 of the Small Business Act, the "sue and be sued clause." *Mullins v. First Nat'l Exchange Bank,* 275 F.Supp. 712 (W.D.Va.1967) (plaintiff's claim for tortious invasion of contract rights was barred by sections 2680(a) and (h) of the FTCA and claim could not be brought under § 634 of Small Business Act because FTCA was exclusive remedy); *United States v. Delta Indus., Inc.,* 275 F.Supp. 934 (N.D.Ohio 1966) (suit cannot be maintained under § 634 because FTCA is the exclusive remedy, despite the fact that Section 2680(a) bars suit).

This Court finds the reasoning of these cases sound and concludes that the strict liability claim against the United States which sounds in tort cannot be maintained under the sue and be sued clause cited by the plaintiffs.

### 3. Restitution and Indemnity

■ Finally, the government moves to dismiss the Eighth Claim for restitution and the Ninth Claim for equitable indemnity contending that the Court has no jurisdiction over these non-tort claims.[4]

---

3. The government also argues that the Complaint fails to state a sum certain in that it requests either $609,100 plus response costs *or* $20,000,-000 for the diminished value of the property. The government's argument here is flawed because the paragraphs requesting relief are separated by semi-colons and the last paragraph is preceded by the word "and". Thus, the Complaint requests all of the relief, not relief in the

alternative. It appears that the government has simply misread the complaint.

4. Although the Government at first viewed the equitable indemnity claim as a tort, it apparently does not dispute that it could also be construed as a contract implied by law.

The Government ultimately does not dispute that the "sue and be sued" clause of the Reconstruction Finance Corporation Act constitutes a waiver of sovereign immunity for such claims. Government Reply Memorandum of Law at 9. *See Keifer & Keifer v. Reconstruction Finance Corp.*, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939); *C.H. Sanders Co., Inc. v. BHAP Housing Dev. Fund Co., Inc.*, 903 F.2d 114, 118–120 (2d Cir.1990) (sue and be sued clause constituted waiver of sovereign immunity by HUD outside confines of the Tucker Act). Instead, the Government contends that such clauses only provide for a waiver of sovereign immunity and do not additionally constitute grants of subject matter jurisdiction. It is of course well-settled that for an action to be properly before the district court both requirements must be met. *C.H. Sanders*, 903 F.2d at 117.

This argument appears to be foreclosed by the decision of the Supreme Court in *American Nat'l Red Cross*, 505 U.S. at 249, 112 S.Ct. at 2468. In that case, the Court construed the clause in the charter of American National Red Cross which authorized the organization "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States" to confer original jurisdiction on federal courts over all cases to which the Red Cross was a party. Since the clause at issue here is similarly worded, the Court concludes that as to the United States, it has subject matter jurisdiction over plaintiffs' claims for restitution and equitable indemnity. The Tucker Act, unlike the Federal Tort Claims Act, does not provide the exclusive remedy for contract claims. Thus, plaintiffs would not be required to pursue these claims in the Court of Claims.[5]

**B.** *Liberty Industrial's Motion to Dismiss Causes of Action 4–9*

**1.** *Jurisdiction*

Defendant Liberty Industrial argues that this Court lacks supplemental jurisdiction to hear the state law claims set forth in Causes of Action Four through Nine. In the alternative, Liberty Industrial urges the Court to decline to exercise its power to hear the state law claims.

This Court's power to decide state claims is governed by 28 U.S.C. § 1367(a), which provides:

> [I]n any civil action of which the district courts shall have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The established test for the exercise of supplemental jurisdiction is that the federal claims must be substantial and the federal and state claims must "derive from a common nucleus of operative fact" and be such that a plaintiff "would ordinarily be expected to try them all in one proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Section 1367(c) provides four instances where courts may decline to exercise jurisdiction: (1) claims which raise novel or complex issues of State law, (2) the pendant claims substantially predominate, (3) the district court has dismissed all the claims over which it had original jurisdiction and (4) there are other compelling reasons for declining jurisdiction.

■ Defendant Liberty Industrial, in support of its argument that this court lacks the power to exercise supplemental jurisdiction, relies on two cases which are distinguishable from the instant case. In *Sun Enters., Ltd. v. Train*, 394 F.Supp. 211 (S.D.N.Y.1975), *aff'd*, 532 F.2d 280 (2d Cir. 1976), state law claims were dismissed where the state law claims alleged discharge of "sewage treatment effluent," and the federal

---

**5.** The Government correctly argues that the Complaint does not rely on the sue and be sued clause in its jurisdictional allegations, although reference is made to the Reconstruction Finance Corporation Act in describing the reason for naming the United States as a party. (Complaint at ¶ 9). Accordingly, plaintiffs would be required to amend the complaint to assert the basis for jurisdiction. It also appears that the named party should be the particular federal agency or agencies which assumed the powers and liabilities of the RFC and DPC after they were dissolved as opposed to the United States. Neither party has addressed this point.

claims alleged only the discharge of "dredged or fill material." Thus, the state and federal claims were based on contamination from entirely different sources and did not satisfy the *Gibbs* standard. *Id.* at 224. In *United States v. Town of North Hempstead,* 610 F.2d 1025 (2d Cir.1979), state and federal claims did not derive from a common nucleus of operative fact where the state claims arose out of operations of a landfill while the federal claims alleged air pollution from an incinerator. In the instant case, plaintiffs' claims all arise out of the same set of facts, namely, the disposal of hazardous waste on the Nassau County property. Moreover, several courts in this circuit have recognized, in similar CERCLA cases, that they had the power to hear the pendent state claims. *See, e.g., Commerce Holding Co., Inc. v. Buckstone,* 749 F.Supp. 441, 446 (E.D.N.Y.1990) (parties conceded court had power to hear state claims, but defendants argued against court exercising its discretion); *Alloy Briquetting Corp. v. Niagara Vest, Inc.,* 756 F.Supp. 713 (W.D.N.Y.1991) (in action alleging violations of CERCLA, court exercised pendent jurisdiction over state law claims). This court concludes that it has the *power* to hear the instant state claims. The issue then is whether this court, in its discretion, should exercise its jurisdiction to hear the pendent state claims.

Defendant Liberty Industrial argues that this Court should decline to exercise jurisdiction over the state claims because the state law claims predominate over the CERCLA claims. Specifically, Liberty Industrial argues that in terms of proof, the scope of the issues raised and the remedies sought, the state claims are substantially greater than the federal CERCLA claim. Liberty Industrial relies primarily on two cases which dismissed state law claims on this basis. *Commerce Holding Co.,* 749 F.Supp. at 446 (dismissing state law claims including claims of nuisance, strict liability for an abnormally dangerous activity and

negligence finding that the state claims "substantially predominate the CERCLA claim"); *Dublin Scarboro Imp. Ass'n v. Harford County, Md.,* 678 F.Supp. 129, 131 (D.Md. 1988) (dismissing state law claims, including claims of nuisance, negligence, trespass and strict liability, finding that the state law claims would "encumber this Court and the parties to the extent that the goal of expeditious determination of the rights of the parties will be impaired.")

An important distinction between these cases and the case now before the Court is that the United States is a defendant in this case. Considering that the tort claims against the government can only be heard in federal court, federal court is the only place where all of plaintiffs' claims may be heard together. *Verdi v. United States,* 636 F.Supp. 114, 118–119 (E.D.N.Y.1986). Thus, because the government is a defendant in this action, this Court will exercise its jurisdiction to hear the state claims against the other defendants.[6]

### 2. *Failure to State a Claim— Causes of Action 4–7*

Defendant Liberty Industrial also moves to dismiss causes of action four through seven for failure to state a claim.

#### a. *Nuisance*

Causes of action Four through Six are for intentional nuisance, negligent nuisance, and strict liability for conducting an abnormally dangerous activity, respectively. Citing the Restatement of Torts 2d (Tent.Draft No. 16) § 822, the New York Court of Appeals has stated that

one is subject to liability for a private nuisance if his conduct is a legal cause of the invasion of the interest in the private use and enjoyment of land and such invasion is (1) intentional and unreasonable, (2) negligent or reckless, or (3) actionable under the rules governing liability for abnormally dangerous activities.

---

**6.** Moreover, since this Court, on the motion of Liberty Industrial, ultimately dismisses the tort claims of private nuisance, strict liability and trespass, the only state law claims that remain are for restitution and equitable indemnity. The damages sought in these claims are for the costs

of cleaning up the Site. Accordingly, although the legal theories are distinct, the evidence as to the type of damages will be the same for the CERCLA claims and the remaining state law claims—a factor supporting the assumption of supplemental jurisdiction.

*Copart Indus., Inc. v. Consolidated Edison Co. of New York, Inc.,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 172, 362 N.E.2d 968, 971 (1977) (citations omitted).

■ The law of nuisance historically evolved as a means of resolving conflicts between neighboring contemporaneous land users. *Philadelphia Elec. Co. v. Hercules, Inc.,* 762 F.2d 303, 314 (3d Cir.), *cert. denied.,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985). A claim for private nuisance exists where a property owner creates or maintains a condition or activity on his property which interferes with the use and enjoyment of another's property. *Wellesley Hills Realty Trust v. Mobil Oil Corp.,* 747 F.Supp. 93, 98 (D.Mass.1990). The offending condition does not exist on plaintiff's land but on defendant's land, *Wilson Auto Enters., Inc. v. Mobil Oil Corp.,* 778 F.Supp. 101, 107 (D.R.I. 1991), and the injury must be to persons outside of the defendant's premises. *Miller v. Morse,* 9 A.D.2d 188, 192 N.Y.S.2d 571, 576 (1959) (tenant may not recover from a landlord for an alleged nuisance).

Liberty Industrial argues persuasively and with the support of ample case authority that the law of nuisance cannot be expanded to permit recovery in the circumstances alleged here; namely, where current owners of property seek recovery against a prior lessee of the land for a condition created on the land during the lessee's tenancy. In such circumstances the offending condition is not present on the defendant's land and the conflict does not involve neighboring contemporaneous land uses.

The Third Circuit found that there was no cause of action for private nuisance where a property owner brought suit against a corporation whose predecessor in interest had previously owned the property and caused contamination of the ground water. The Court observed that it found no case which "permits a purchaser of real property to recover from the seller on a private nuisance theory for conditions existing on the very land transferred." *Philadelphia Elec.,* 762 F.2d at 313. The Court concluded that the current owner of the property could not recover for a duty the defendant may have previously owed to others, namely, the defendant's

neighbors and observed that this result was "consonant with the historical role of private nuisance law as a means of efficiently resolving conflicts between *neighboring,* contemporaneous land uses." *Id.* at 314 (citing *Essick v. Shillam,* 347 Pa. 373, 32 A.2d 416, 418 (1943)).

Other courts employing reasoning similar to that of the Third Circuit have consistently rejected the efforts of property owners who discover contamination on their properties to maintain private nuisance claims against the former owners or lessees. *See Westwood Pharmaceuticals, Inc. v. Nat'l Fuel Gas Dist., Corp.,* 737 F.Supp. 1272, 1282–84 (W.D.N.Y.1990) (concluded that New York courts would apply the doctrine of caveat emptor to preclude private nuisance claim by current owner against former owner); *see also Amland Properties Corp. v. Aluminum Co. of America,* 711 F.Supp. 784, 807–808 (D.N.J.1989); *Rosenblatt v. Exxon Co., U.S.A.,* 335 Md. 58, 642 A.2d 180 (1994); *Hanlin Group, Inc. v. Int'l Minerals & Chemical Corp.,* 759 F.Supp. 925, 935 (D.Me. 1990).

The New York Court of Appeals has not addressed the viability of a private nuisance claim in the circumstances alleged here; this Court is confident, however, that it would follow the sound reasoning of the cases cited herein and not expand the doctrine of nuisance to permit a subsequent owner of property to maintain a claim against either a former owner or lessee.

■ Traditionally, nuisance claims in New York have been restricted to cases involving two, separately owned pieces of property. *See, e.g., Nussbaum v. Lacopo,* 27 N.Y.2d 311, 317 N.Y.S.2d 347, 351, 265 N.E.2d 762, 765 (1970) (with respect to claims of nuisance, "the use must be such as to produce a tangible and appreciable injury to neighboring property"); *Graham v. Wisenburn,* 39 A.D.2d 334, 334 N.Y.S.2d 81, 83 (1972) (where tenant complained of conditions which landlord failed to repair, court held that "there is no basis for finding that a common-law nuisance is involved since the conditions involved do not arise from outside the subject premises") (citing, *Miller,* 192 N.Y.S.2d at 576). This court declines to

extend New York nuisance law to claims made by owners against prior owners where New York Courts have yet to adopt such a theory of liability. *See Westwood Pharmaceuticals,* 737 F.Supp. at 1284. Moreover, the wisdom of extending this common law doctrine into the area of environmental pollution is questionable considering that Congress and state legislatures are working to formulate acceptable parameters of the rights and liabilities of parties in this area. *See, Philadelphia Elec.,* 762 F.2d at 315. Accordingly, Liberty Industrial's motion to dismiss causes of action four and five is granted.

### b. *Strict liability*

Defendant Liberty Industrial also moves to dismiss plaintiffs' Sixth Cause of Action for strict liability. Defendant interprets the claim as another legal theory underlying the claim of private nuisance in that, defendants are alleged to have negligently created a nuisance, intentionally created a nuisance and have created a nuisance by having engaged in an abnormally dangerous activity for which they are strictly liable. If plaintiffs' Sixth Cause of Action is read solely as a nuisance claim then it seems that defendant correctly argues that it is not viable for the reasons already articulated herein.

Courts, however, have viewed the two claims as separate and independent, and on facts similar to those before the court, have rejected a private nuisance claim but upheld a claim for strict liability. *See, e.g., Hanlin Group,* 759 F.Supp. at 933–34; *Amland Properties,* 711 F.Supp. at 801–07.

For the purpose of reviewing the sufficiency of plaintiffs' complaint, the Court will construe Claim Six for strict liability broadly as a separate cause of action.

■ In support of the viability of the strict liability claim, plaintiffs rely on the decision of the New Jersey Supreme Court in *T & E Indus., Inc. v. Safety Light Corp.,* 123 N.J. 371, 587 A.2d 1249 (1991). In that case, the Court held that the owner of a radium contaminated property could hold a distant predecessor in title who was responsible for the contamination strictly liable for damages

caused by its having engaged in an abnormally dangerous activity. The Court concluded that the reasoning which precluded private nuisance claims in this factual setting was not applicable to claims for strict liability and that no rational analysis supported a view that a landowner having engaged in this type of activity should be liable only to neighboring property owners. *T & E Indus.,* 587 A.2d at 1256–57. The Court further concluded that the doctrine of caveat emptor did not foreclose a strict liability claim. *Id.* at 1257.

Other courts have dismissed claims of strict liability brought by current property owners against the former occupants. In *Wilson Auto Enters.,* a federal district court in Rhode Island concluded that the doctrine of caveat emptor precluded a claim by a purchaser of property against a vendor's lessee for damages resulting from the lessee's alleged contamination of the property. *Wilson Auto Enters.,* 778 F.Supp. at 107. The Court of Appeals of Maryland in *Rosenblatt v. Exxon Company,* reached a similar result. The Court declined to extend the doctrine of strict liability to hold a former tenant/occupant of commercial property liable to the current tenant for contamination of the property during the former tenant's occupancy.

The Court reasoned as follows:

> When an owner or occupier of land engages in activities which are related to such ownership and occupation and which are abnormally dangerous in relation to the particular site, we place upon the actor the burden of bearing the risk of any harm to neighbors which arises from the activity, notwithstanding the absence of fault on the part of the actor. This burden is justified when weighing the rights of the actor, who benefits from the activity, against those of the occupants of neighboring land, who do not benefit and have no way of avoiding the harm to their property that may result from a dangerous activity on adjacent land. Subsequent users, however, are able to avoid the harm completely by inspecting the property prior to purchasing or leasing it. Thus, it is not unreasonable to expect subsequent users to bear the risk of such harm. We think, however, that it would be unreasonable to hold the prior user liable

to remote purchasers or lessees of commercial property who fail to inspect adequately before taking possession of the property. *Rosenblatt,* 642 A.2d at 188. The Court further concluded that the doctrine of caveat emptor applied to lessees and was still applicable to the sale of commercial property.

Finally, the Court observed that the extension of the doctrine was inconsistent with the principles set forth in Section 519 of the Restatement (Second) of Torts which made "clear that the harm for which the actor conducting the abnormally dangerous activity will be held liable is harm to the person or property of another." *Id.* The Court concluded that it was not logical to interpret the language to hold an actor strictly liable for harm to his own property after the property changes hands. *Id.*

A Florida Court has also rejected the analysis of *T & E Industries* and refused to extend the rule of strict liability to apply to remote owners and users of the land and to extend the cause of action from a claim available to neighbors to a claim available to subsequent owners of the property. *Futura Realty v. Lone Star Bldg. Ctrs., Inc.,* 578 So.2d 363 (Fla.Dist.Ct.App.1991).

The decision of the New Jersey Court in *T & E Industries* has been recognized by legal commentators as noteworthy for its expansion of the doctrine of strict liability. Albert G. Besser, *Caveat Emptor—Where Have You Gone?,* 4 Hofstra Prop.L.J. 203 (1992); Jim C. Chen & Kyle E. McSlarrow, *Application of the Abnormally Dangerous Activities Doctrine to Environmental Cleanups* 47 Bus. Law. 1031 (1992); Christine M. Beggs, *As Time Goes By: The Effect of Knowledge and the Passage of Time on the Abnormally Dangerous Activity Doctrine,* 21 Hofstra L.Rev. 205 (1992). The Courts in New York have not addressed the issue of whether the strict liability doctrine may be employed as a vehicle for a subsequent property owner to recover damages for contamination to the property by a former owner or lessee.

Plaintiffs argue that the decision of the New York Court of Appeals in *Caceci v. DiCanio Construction Corp.,* 72 N.Y.2d 52, 530 N.Y.S.2d 771, 526 N.E.2d 266 (1988), which abolished the doctrine of caveat emptor for the sale of newly constructed homes, portends that the New York Court of Appeals will eliminate that doctrine in the present context and permit suits in strict liability. This Court is not persuaded of this result. In *Westwood Pharmaceuticals,* the Court observed that the general rule in New York is that the sale of real property is governed by the doctrine of caveat emptor and there is no reason to believe that the New York Court of Appeals would refuse to apply the doctrine where the vendor and vendee of the property were sophisticated commercial enterprises. *Westwood Pharmaceuticals,* 737 F.Supp. at 1282.

In the absence of any clear indication or trend in the New York case law suggesting that the New York Court of Appeals would apply the doctrine of strict liability in this type of action, this Court declines to do so.

### c. *Trespass*

In the Seventh Cause of Action, plaintiffs allege that the releases and discharges of hazardous substances by the defendants and the presence of these substances in the soil and ground water of the Site constitute a "continuing trespass", and that the plaintiffs never authorized the invasion of their property with hazardous substances.

In support of this claim, plaintiffs rely on Section 161(1) of the Restatement (Second) of Torts which provides in pertinent part "[a] trespass may be committed by the continued presence on the land of a ... thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it."

The principal case supporting plaintiffs' position is a decision of a California intermediate appellate court, *Newhall Land and Farming Co., et al. v. Superior Court of Fresno County,* 19 Cal.App.4th 334, 23 Cal. Rptr.2d 377 (1993) which in turn relied upon another California decision, *Mangini v. Aerojet–General Corp.,* 230 Cal.App.3d 1125, 281 Cal.Rptr. 827 (1991). In *Newhall* the Court concluded that a prior owner of property was liable to the property's subsequent owner for continuing trespass since the first owner during its occupancy had placed contaminants in the soil which remained on the property.

The Court concluded that the first owner had "tortiously" placed the contaminants in the soil in the first instance since in so doing he created a public nuisance and the continued presence of the contaminants constituted a continuing trespass. *Newhall*, 23 Cal. Rptr.2d at 384.

■ "Under New York law, trespass is the interference with a person's right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner." *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1361 (2d Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); (citing, *Ivancic v. Olmstead Oil Co.*, 66 N.Y.2d 349, 497 N.Y.S.2d 326, 488 N.E.2d 72 (1985), *cert. denied*, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 658 (1986); *Phillips v. Sun Oil Co.*, 307 N.Y. 328, 121 N.E.2d 249 (1954)). An actionable trespass must involve a wrongful or unjustifiable entry upon the land of another. *Malerba v. Warren*, 108 Misc.2d 785, 438 N.Y.S.2d 936, 940 (Sup.Ct.1981).

■ Although New York Courts have not addressed a trespass claim on facts similar to the instant case, this Court does not believe that New York courts would follow the California precedent and eliminate the basic element of a trespass claim, namely, the invasion of the property of another. The majority of jurisdictions to address claims of continuing trespass where a current owner of property seeks damages for contamination from a former owner or lessee have rejected these claims for failure to allege the basic element of intrusion upon the land of another, since in each case the contamination occurred prior to plaintiffs' ownership and while the defendants were lawful occupants of the premises. *See, e.g., Rosenblatt*, 642 A.2d at 189–90 (continuing trespass involves the tortious placing of something on the land of another); *Hanlin Group*, 759 F.Supp. at 937 (claim of trespass dismissed where complaint failed to allege intrusion onto land of another); *Wellesley Hills*, 747 F.Supp. at 99 (service station operator's release of oil on service station property could not constitute a trespass against a subsequent owner of that property because trespass requires "an unprivileged, intentional intrusion on land in

the *possession of another.*") (citing, *New England Box Co. v. C & R Const. Co.*, 313 Mass. 696, 49 N.E.2d 121 (1943)). Accordingly, plaintiffs' trespass claim is dismissed because an essential element of a claim for trespass has not been alleged.

#### d. *Restitution and Indemnity*

Finally, defendant Liberty Industrial has moved to dismiss Causes of Action Eight and Nine, for restitution and equitable indemnity, respectively.

■ A claim for restitution arises where "[a] person who has performed the duty of another, by supplying things or services ... with intent to charge therefor, and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety." Restatement of Restitution § 115; *see also City of New York v. Keene Corp.*, 132 Misc.2d 745, 505 N.Y.S.2d 782, 784 (Sup.Ct.1986). Here plaintiffs 55 Motor alleges that it expended sums of money to remedy conditions of contamination created and maintained by the defendants in violation of environmental and common law and that the actions it took were immediately necessary to satisfy the requirements of public health. These allegations facially set forth a claim for restitution.

Defendants have failed to provide this court with a basis to dismiss this claim. Restitution is not being sought merely as an element of damages of the dismissed claims of private nuisance, strict liability or trespass. It is brought as a separate claim. Although defendants argue that this claim is barred by the doctrine of caveat emptor, the cases cited for that proposition do not support that position. In *Philadelphia Elec.*, the Court addressed a claim for indemnity not restitution, and it did not directly apply the doctrine of caveat emptor in dismissing the claim but only noted that the same policy considerations underlying that doctrine applied to a claim of indemnity. *Philadelphia Elec.*, 762 F.2d at 318. In *Westwood Pharmaceuticals*, the Court dismissed the restitution claim because it was pled as a restatement of the private nuisance claim and because it was barred by the statute of limita-

tions. *Westwood Pharmaceuticals*, 737 F.Supp. at 1284. These cases cannot be read as precluding a separate claim for restitution which is not premised upon the torts of private nuisance, trespass or strict liability. Since the cause of action sets forth all the basic elements of a claim for restitution, the Court declines to dismiss it on the grounds advanced by the defendants.

A claim for indemnity arises where "[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other." Restatement of Restitution § 76; *see also, City of New York v. Keene Corp.*, 505 N.Y.S.2d at 784.

In their Ninth Cause of Action, plaintiffs plead that the defendants, by disposing of hazardous substances on the Site, contaminated it and that their improper management of hazardous substances at the Site gave rise to a common law duty to remedy the conditions before transferring their interests in the property. Plaintiffs further allege that they have a common law duty to remedy hazardous conditions on their property and that to satisfy this duty they had to expend substantial sums of money to remedy contamination caused by the defendant. Plaintiffs further contend that they neither created nor contributed to the hazardous substance contamination.

Plaintiffs' claim for indemnity as briefed by the parties turns largely on the issue of plaintiffs' fault.

Defendants contend that plaintiffs are not entitled to equitable indemnity because on the face of the complaint they have conceded that they are wrongdoers because they are currently maintaining a nuisance. In support of this position, defendants cite, among others, the decision of the Appellate Division, First Department in *Trustees of Columbia*. In that case, the Court described the principle of implied indemnity as permitting "one who is held vicariously liable solely on account of the negligence of another to shift the entire burden of the loss to the actual wrongdoer." *Trustees of Columbia*, 492 N.Y.S.2d at 375 (citations Omitted). The Court continued, "[s]ince the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." *Id.* at 375.

Plaintiffs counter that they are without fault and that in any event, the law of implied indemnity is not limited to those who are personally free from fault, citing, *Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680, 555 N.Y.S.2d 669, 675, 554 N.E.2d 1257, 1263 (1990). In *Mas*, a landlord was found liable for injuries to a tenant occasioned by operation of a faulty elevator and for its independent fault in failing to respond for thirty minutes to her cries for help. The jury apportioned fault at 5% against the plaintiff for her comparative negligence, 10% against the owner for failure to provide assistance and 85% against the owner and Otis, the company who had contracted to maintain the elevator, for failure to maintain and repair the elevator. The Court granted the owner's cross claim for indemnification for that portion of the verdict awarding damages for negligent maintenance and repair of the elevator. Otis claimed that the owner was not entitled to indemnity because the owner was at fault. The Court rejected the position of Otis noting that "[t]he jury having found separate grounds of liability ... we see no reason why equitable principles should prevent a defendant from recovering a loss occasioned by imputation of law, notwithstanding its sole liability for another part of the damages based upon an act of primary negligence." *Id.* at 674–75, 554 N.E.2d at 1262–63.

According to the allegations of the complaint, the plaintiffs were not "at fault" in creating the condition which now gives rise to the damages incurred as a result of the necessity to clean up the contamination. Their duty to clean up the premises does not equate to a fault which would bar a claim of indemnity. *See, e.g., City of New York*, 505 N.Y.S.2d at 785–86; *State of New York v. Stewart's Ice Cream Co., Inc.*, 64 N.Y.2d 83, 484 N.Y.S.2d 810, 473 N.E.2d 1184 (1984). Whether or not plaintiffs will ultimately prevail on a claim that they are free from fault in their current ownership and operation of

the premises is a question that obviously cannot be resolved on a motion to dismiss. The Court is not persuaded that plaintiffs have failed to state a claim for indemnity.

█ Defendant Liberty Industrial correctly notes, however, that New York law limits restitution and indemnity claims to recovery of expenses which have already been incurred. *Alloy Briquetting Corp. v. Niagara Vest, Inc.*, 756 F.Supp. 713, 722–723 (W.D.N.Y.1991); *City of New York*, 505 N.Y.S.2d at 787 (citing *State of New York v. Schenectady Chemicals, Inc.*, 103 A.D.2d 33, 479 N.Y.S.2d 1010 (1984)). Accordingly, to the extent that plaintiffs' Eighth and Ninth Claims for relief seek recovery of *future* costs, they are precluded from recovering these damages.

### C. *Liberty Industrial's Motion to Dismiss Cross–Claims*

Defendant Liberty Industrial also moves to dismiss defendants Liberty Aero and Liberty Associates' state law cross-claims for indemnification and contribution, and, in the alternative, for a more definite statement with respect to Liberty Aero's cross-claims.

In light of the above discussion, this Court denies Liberty Industrial's motions to dismiss the state law cross-claims for indemnification and contribution. The motion for a more definite statement is granted.

### CONCLUSION

For the reasons set forth above, the government's motion to dismiss for lack of jurisdiction is GRANTED as to the Sixth Cause of Action and DENIED as to the remaining state law causes of action. Liberty Industrial's motion to dismiss for failure to state a claim is GRANTED as to the Fourth through Seventh Causes of Action, but denied as to the Eighth and Ninth Causes of Action. Liberty Industrial's motions to dismiss Liberty Aero and Liberty Associates' cross-claims for restitution and indemnity are DENIED. Its motion for a more definite statement is GRANTED.

SO ORDERED.